[No. B223148. Second Dist., Div. Three. Sept. 28, 2011.]

CYNTHIA L. BURCH, Plaintiff and Respondent, v.
PREMIER HOMES, LLC, et al., Defendants and Appellants.

COUNSEL

Gemmill, Baldridge & Yguico, Carlos V. Yguico, Jay Statman; Zimmerman & Kahanowitch, Brian F. Zimmerman and Megan C. Winter for Defendants and Appellants.

Costell & Cornelius, Jeffrey Lee Costell, Alexandre Ian Cornelius, Lewis B. Adelson and Jonathon D. Nicol for Plaintiff and Respondent.

OPINION

**CROSKEY, J.**—In this case, plaintiff and respondent, Cynthia L. Burch, filed a complaint for damages arising out of alleged construction defects. After she filed that complaint, defendants and appellants[1] moved to compel arbitration of her claims and now seek reversal of the trial court's order denying that motion.[2] The trial court concluded that the arbitration clause in the agreement between Burch and defendants was susceptible to conflicting interpretations with respect to its scope. The court therefore solicited, received and considered extrinsic evidence with respect to the intent of the

---

[1] Defendants and appellants are Premier Homes, LLC, Custom Home Builders, Inc., Scott Warren and Daniel Shahar (collectively, defendants).

[2] An order denying a motion to compel arbitration is immediately appealable. (Code Civ. Proc., § 1294, subd. (a); *Mayhew v. Benninghoff* (1997) 53 Cal.App.4th 1365, 1369 [62 Cal.Rptr.2d 27].)

parties on this issue, and even took the unusual step of receiving oral testimony at a special hearing. After considering such evidence and weighing the credibility of the several witnesses who had provided written and oral testimony, the trial court held that no agreement had been reached between the parties to arbitrate the issues and claims raised by Burch in her complaint.

In our view, the trial court correctly concluded that the arbitration clause was reasonably susceptible to conflicting interpretations and acted within its discretion in considering extrinsic evidence of the parties' intent, including the receipt of additional oral testimony at a special hearing. As the record before us demonstrates that substantial evidence supports the trial court's conclusion as to the parties' intent and that there was no agreement to arbitrate the issues raised in the pending complaint, we will affirm the order denying the motion to compel.[3]

## FACTUAL AND PROCEDURAL BACKGROUND[4]

Defendants developed and built a home at 516 Almar Avenue in Pacific Palisades, California (the property). On February 8, 2007, Burch signed an offer to purchase the property for $3.3 million.[5] Burch submitted her offer on a standard California Association of Realtors (CAR) preprinted contract entitled "Residential Purchase Agreement and Joint Escrow Instructions"[6] (purchase agreement). To her offer, Burch attached an addendum No. 1 in which she requested certain additional features and fixtures. The preprinted CAR form included a paragraph 17 which provided, in part, "Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration . . . . "[7]

On or about February 10, 2007, Burch's broker, Lisa Morrin (Morrin) received a counteroffer from defendants that, among other things, included an addendum No. 2. This addendum related to a new house limited warranty that would be issued by the Home Buyers Warranty Corporation (HBW) based in

---

[3] As there was no agreement to arbitrate, we need not reach or discuss the issues raised by defendants under the Federal Arbitration Act (FAA; 9 U.S.C. § 2 et seq.).

[4] It appears that the relevant facts that we recite are essentially undisputed. To the extent that a dispute does exist, we recite the facts as expressly or implicitly found by the trial court in its resolution of such factual dispute. (*DiMartino v. City of Orinda* (2000) 80 Cal.App.4th 329, 336 [95 Cal.Rptr.2d 16].)

[5] This was $99,000 less than the price at which defendants had listed it for sale.

[6] Although Burch was an experienced attorney and a partner in a major Los Angeles law firm, she specialized in environmental and administrative law. She was not familiar with real estate law.

[7] As we discuss below, the parties later agreed that this clause would only apply to disputes arising before the close of escrow.

Denver, Colorado.[8] Addendum No. 2 included provisions relating to the arbitration of disputes that may arise between Burch, defendants and HBW. Burch was told by Morrin that she had never seen a proposed contractual provision that would require a home buyer to agree to arbitrate with a builder over construction defects.

Burch explained to Morrin that she did not want to buy the property if her rights under California law were modified or if she would be forced to arbitrate any disputes that may arise with defendants. However, she and Morrin discussed the idea of executing defendants' counteroffer to specifically open escrow to buy the property; and then, within the 12-day contingency period provided for under her original offer, negotiate with defendants over the addendum No. 2 terms with which she disagreed. Burch ultimately decided to pursue this approach, but told Morrin to immediately notify defendants that Burch did not approve of all of the terms in addendum No. 2, that she wanted to negotiate the removal of the term that required her to arbitrate any dispute with defendants or that would alter her rights under California law, and that she wanted a copy of the terms of the applicable warranty as soon as possible. Morrin told defendant Scott Warren (Warren) that Burch would not agree to buy the property if Burch had to give up her rights under California law.

On February 11, 2007, in accordance with this decision, Burch executed defendants' counteroffer with its addendum No. 2 and, over the next few days, negotiated with Warren over the terms of addendum No. 2 and the 2-10 HBW asset protection warranty (the Warranty). At the time that Burch executed defendants' counteroffer, she had not yet received the booklet for the Warranty that she had previously requested. Burch did not want to commit to buying the property or to lifting any contingencies for its purchase until she had received and reviewed the Warranty booklet and had an opportunity to negotiate the removal of the provisions that would affect her rights under California law *for claims against the builder for construction defects*. During these conversations, Warren insisted that he could only sell the property to Burch with the unaltered language in addendum No. 2,

---

[8] The record reflects that HBW administers a nationwide home buyer warranty program which involves a 10-year insurance-backed new home warranty providing warranty coverage against certain types of construction defects in homes offered for sale by enrolled homebuilders. The builders apply to HBW for admission into the HBW program. Following admission and payment of enrollment fees (paid exclusively by the builder, at no cost to the home buyer), the HBW-enrolled builders issue HBW warranties on the homes that they sell to the public. The builders issue the HBW warranty concurrently with the sale of the new home to the home buyer. The HBW warranties provide that the enrolled home will be free of workmanship defects for a term of one year, free of systems defects (plumbing, electrical, mechanical) for a term of two years, and free of "Structural Defects" for a term of 10 years. The warranties in this program are insured pursuant to the Federal Liability Risk Retention Act. (15 U.S.C. §§ 3901–3906.)

because HBW required that it be included in the purchase agreement in order for the Warranty to be issued under HBW's Warranty program. Of particular relevance here is the provision in addendum No. 2 relating to arbitration: "1. '*Arbitration of Disputes.*' A. Paragraph 17 of the Agreement [(the CAR arbitration provision)] shall only apply to disputes that arise before the Close of Escrow. [¶] B. The following provisions shall only apply to disputes that arise after the Close of Escrow. It is hereby agreed that all claims, disputes, and controversies between Buyer and Seller arising from or related to the Property, or to any defect in or to the Property or the real property on which the Property is situated, or the sale of the Property by Seller including, but not limited to, any claim for breach of contract, negligent, or intentional misrepresentation, shall be submitted to binding arbitration by and pursuant to the arbitration provision contained in the most recent edition of the HBW Limited Warranty Booklet, as of the date of the execution of this Agreement. The Booklet has been made available to Buyer, and is incorporated herein by reference, and made a part of this Agreement. Notwithstanding any provision to the contrary in the Agreement, the arbitration provisions are hereby amended by the following provisions as though fully set forth therein: Builder has elected to adopt the standards and procedures set forth in the California Civil Code commencing at Section 895, et seq. (the 'Code').[9] Builder has notified Buyer that it intends to follow the pre-litigation procedures in the Code commencing at Section 910, et seq. In the event Buyer makes a Claim within the purview of the Code, Builder and Buyer agree that the pre-litigation procedures within the Code, as adopted by Builder, shall control the claim process. In the event the pre-litigation procedures do not result in the resolution of Buyer's claim and Buyer pursues a further action, Buyer and Builder acknowledge the applicability of, and shall be bound by the Arbitration Agreement contained in the 2-10 HBW Asset Protection Program, the terms of which shall control the arbitration process. Buyer and Builder shall be limited to seeking redress within the specific terms of the 2-10 HBW Arbitration provisions."[10]

---

[9] This has reference to the Civil Code provisions relating to actions for construction defects enacted in 2002 by Senate Bill No. 800 (2001–2002 Reg. Sess.) and includes Civil Code sections 895 to 945.5.

[10] Defendants also attached an addendum No. 3 to their counteroffer which provided: "*Warranties.* Notwithstanding any provision to the contrary in the Agreement, any warranty provisions set forth in the Agreement are hereby deleted and replaced in their entirety by the following provisions: Seller is hereby providing Buyer with the warranty contained in the most recent edition of the 2-10 Home Buyers Warranty Booklet, as of the date of the execution of this Agreement. That Booklet has been made available to Buyer, and is incorporated herein by reference, and made a part of this Agreement. The warranty contained in the Booklet is the sole warranty provided to Buyer. Any other warranty or warranties, whether express or implied, are disclaimed by Seller and waived by Buyer, unless otherwise prohibited by California law." There is no issue in this appeal relating to addendum No. 3.

Despite Warren's repeatedly taking the position that the Warranty provides extra protection for Burch's benefit, Burch believed that Warren really wanted the Warranty for defendants' benefit. Warren specifically told Burch that the language in addendum No. 2 applied *only* with respect to the Warranty, rather than with respect to disputes between Burch and defendants. Burch, however, told Morrin and Warren that she "did not really want the Warranty" and "just wanted to make sure that [she retained] all [her] rights under California law."

When Burch finally obtained a copy of the Warranty booklet on February 14, 2007, she set up a conference call to discuss the Warranty and the language in addendum No. 2. Participating in the conference call were Burch, Morrin, Warren, Joan Riordan (Riordan), general counsel for HBW, and Don Aberbook (Aberbook), who either worked for or was a principal of HBW. Burch took contemporaneous notes of the telephone conference.

Aberbook, who spoke on behalf of HBW, stated that he was an attorney in California before he moved to Colorado and that he had participated in the drafting of the California statute (Sen. Bill No. 800 (2001–2002 Reg. Sess.); Stats. 2002, ch. 722, p. 4247) relating to construction defect litigation (Civ. Code, §§ 895–945.5). Burch responded specifically that she really did not want the Warranty and that having it was not important to her. Aberbook contended that the Warranty was " 'parallel' " to rights and remedies provided by Senate Bill No. 800, but distinct from it and that the Warranty " 'cannot replace buyer's rights under California law.' " Burch then asked Aberbook about the process of filing a claim under the Warranty and reconfirmed to everyone on the conference call that she did not want anything to affect her rights under California law.

Aberbook described the claims process generally and said that Burch could sue under the California statutory scheme or other law if the defects were not repaired. He noted that outside of the HBW Warranty, arbitration was "not uncommon" but that an express agreement to do so was needed. He indicated that the language in addendum No. 2 was provided by HBW and that HBW required its builders to put that language in their purchase agreements if they wanted to have an HBW Warranty issued. Aberbook then stated that the language was *only* for the Warranty to which Burch remarked that this is exactly what Warren had said previously. Aberbook agreed that the language in addendum No. 2 did not otherwise apply to disputes between Burch and defendants. Burch then requested that the parties strike the last sentence of addendum No. 2 (" 'Buyer and Builder shall be limited to seeking redress within the specific terms of the 2-10 HBW Warranty Arbitration provisions' ") in order to clarify that the language in addendum No. 2 would not affect her rights under California law and would only apply where there was a dispute between Burch and HBW with respect to claims made against the

Warranty. And Aberbook agreed to strike that language from the purchase agreement. Warren became noticeably upset at this point and asked, " 'What did I buy then?' "[11]

It is important to note that the language found in the Warranty booklet supports Aberbook's statement that the Warranty is *parallel* to Burch's rights under California law. This language provides, in relevant part: "ARBITRA-TION. Any and all claims, disputes and controversies by or between the homeowner, the Builder, the Warranty Insurer and/or HBW, or any combination of the foregoing, arising from or related to this Warranty, to the subject Home, to any defect in or to the subject Home or the real property on which the subject Home is situated, or the sale of the subject Home by the Builder, including without limitation, any claim of breach of contract, negligent or intentional misrepresentation or nondisclosure in the inducement, execution or performance of any contract, including this arbitration agreement, and breach of any alleged duty of good faith and fair dealing, shall be settled by binding arbitration. Agreeing to arbitration means you are waiving your right to a jury trial."

With the exception of the sentence stricken from addendum No. 2 (see below and, specifically, fn. 13, *post*), the arbitration language above substantively tracks the arbitration language found in addendum No. 2, including language incorporating disputes with the seller/builder. However, the Warranty booklet goes on to state in an addendum that "[t]he protection provided under this Warranty is not in limitation of, but is in addition to, any other rights provided to You under California law." As the Warranty booklet is incorporated by reference into the purchase agreement, the addendum regarding California law appears to also apply to addendum No. 2.

Based on the foregoing, it was Burch's understanding and her intent, which she confirmed in the telephone conference call, that the language she wanted stricken from addendum No. 2 would mean that Burch was going to retain all of her rights under California law with respect to the builder, including the right to go to court. After the telephone conference with HBW, Burch agreed to re-sign addendum No. 2 with the last sentence stricken. Both she and Warren initialed the modification and proceeded with the purchase transaction.[12]

---

[11] This question would seem to support Burch's impression that Warren thought that the HBW Warranty was very important to defendants as it purported to limit their exposure to construction defect claims that fall within the HBW Warranty coverage.

[12] In her declaration filed in opposition to defendants' motion to compel arbitration, Burch testified on this matter as follows: "It was my intent to and I did confirm in the telephone conference that by striking the language from Addendum No. 2 it meant that I was going to have all of my rights under California Law with respect to the builder, including the right to go

Thereafter, defendants and Burch signed an application to request an HBW Warranty from HBW. That application stated, above Burch's signature, that she had received a sample copy of the Warranty booklet and "consent[ed] to the terms of these documents including the binding arbitration provision." Defendants then paid an enrollment fee ($8,250) to enroll the home that Burch was purchasing in the HBW Warranty program. A certificate of Warranty coverage was later mailed to Burch. The escrow thereafter closed.

Following the close of escrow on April 11, 2008, Burch submitted a claim to HBW regarding certain construction defects that she found in her home. The claim was thereafter denied by HBW. Burch does not contest that denial.

On December 17, 2008, Burch filed this action against defendants seeking recovery of damages for a variety of alleged construction defects. She pled four separate causes of action: (1) breach of contract, (2) negligence, (3) breach of implied warranties and (4) unjust enrichment. On March 25, 2009, defendants filed the subject motion to compel arbitration based on the arbitration clause in addendum No. 2.[13] Burch filed opposition to that motion.

Although the trial court's tentative ruling was to grant the motion, it agreed to give further consideration to Burch's evidence and arguments in opposition; ultimately, at Burch's request, the trial court decided to hold a hearing at which oral testimony would be taken. In doing so, the trial court denied defendants' objection, based on the parol evidence rule, to the trial court's receipt or consideration of any extrinsic evidence. (See Code Civ. Proc., § 1856; *Banco Do Brasil, S.A. v. Latian, Inc.* (1991) 234 Cal.App.3d 973, 1001–1003 [285 Cal.Rptr. 870].) The trial court ruled that the "strikeout" of

---

to court. I was also told that the language in Addendum No. 2 would now only relate to the Warranty. I relied on the agreement to strike the last sentence of Addendum No. 2 and the comments and statements of Mr. Aberbook and the general counsel of HBW in agreeing to go forward with the transaction. If I had been told that my rights under California Law were to be altered or that I had to arbitrate disputes with the builder under the Warranty, then I would not have proceeded with the transaction and would have cancelled within the contingency period. The whole purpose of the telephone conference and the striking of the last sentence in Addendum No. 2 was to make sure that I retained my rights under California Law and to clarify that since the Warranty was in addition to those rights, arbitration would only apply if I elected to pursue legal action against HBW under the Warranty. I have not elected to pursue HBW in any forum or action and thus, it is my understanding, that arbitration does not apply. After the telephone conference with HBW, I agreed to resign Addendum No. 2 with the last sentence being struck out by both Mr. Warren and me and to proceed with the purchase transaction related to the Property."

[13] That arbitration clause reads exactly as quoted above except that the last sentence ("Buyer and Builder shall be limited to seeking redress within the specific terms of the 2-10 HBW Arbitration provisions") was stricken (and such strikeout was initialed by the parties).

the last sentence in the addendum No. 2 arbitration provision created a conflict with respect to the parties' intent as to the scope of arbitration.[14]

After hearing the testimony of Burch, Morrin and Warren, the trial court, on January 4, 2010, issued its order denying defendants' motion to compel arbitration. In its order, the court explained: "The Court concludes that Burch on the one hand, and Aberbook and Warren on behalf of Premier Homes, LLC, on the other hand, all agreed to strike out language in Addendum No. [2] which stated: 'Buyer and Builder shall be limited to seeking redress within the specific terms of the 2-10 HBW Arbitration provisions.' The Court has heard live testimony regarding this ambiguity in the contract. Burch's testimony was more credible than Warren's testimony regarding what the parties' intention was in striking out this clause. The Court finds that the parties' intention was to preserve Burch's right to make state law claims including her right to a jury trial for any non-warranty claims against the builder. The Court finds that Warren and Premier were aware that Burch's intention throughout the negotiation process was to restrict arbitration to issues arising during or related to escrow. [¶] . . . [T]he Court, having reviewed the briefs, declarations, and exhibits, as well as having considered the credibility of the witnesses at the hearing, finds that Burch has met her burden of establishing that no agreement to arbitrate the non-warranty and non-escrow related claims exists."[15]

Defendants thereafter filed this timely appeal.

### ISSUES PRESENTED

As we view this case, the issues presented are simple and straightforward: (1) Did the trial court have the discretion to receive extrinsic oral testimony as to the parties' intent in a special evidentiary hearing? (2) Is there substantial evidence to support the trial court's order resolving the ambiguity? (3) Did the court correctly conclude that there was no agreement to arbitrate the claims plaintiff has asserted against defendants? We answer all of these questions in the affirmative.

---

[14] It is important to note here that Burch is not seeking to impose some collateral oral agreement upon the terms of a signed written contract. Rather, she disputes defendants' interpretation of the arbitration clause in the purchase agreement in light of the negotiated "strikeout" of the last sentence of that clause.

[15] The court also, in a subsequent order, issued on April 8, 2010, awarded Burch $53,300 in attorney fees. (Civ. Code, § 1717; *Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796, 806–808 [70 Cal.Rptr.3d 434].) No issues are raised in this appeal as to such fee award.

## DISCUSSION

### 1. Standard of Review

This record demonstrates a substantial disagreement between the parties as to the scope of the arbitration clause in addendum No. 2. The parties also disagree as to the standard of review. Defendants argue that a de novo standard of review is required on the basis that the written agreement signed by Burch is being challenged by a parol or collateral agreement or promise. Burch argues that a substantial evidence standard is required on the basis that the arbitration clause's scope is ambiguous and the parties presented extrinsic evidence to aid in its interpretation. As we explain, we agree with Burch. The critical issue here is not the application of the parol evidence rule, but the determination of the existence of an ambiguity in the purchase agreement and its resolution by the receipt of extrinsic evidence, the sufficiency of which is determined by the substantial evidence standard of review. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 866, fn. 2 [44 Cal.Rptr. 767, 402 P.2d 839]; *Schaefer's Ambulance Service v. County of San Bernardino* (1998) 68 Cal.App.4th 581, 586 [80 Cal.Rptr.2d 385].)

### 2. The Purchase Agreement Is Ambiguous and Extrinsic Evidence Was Required to Resolve That Ambiguity

■ Defendants argue that the outcome of this appeal should be determined by the application of the parol evidence rule. This rule, "which is codified in Code of Civil Procedure section 1856, provides that the terms of a writing intended by the parties as a final expression of their agreement cannot be contradicted by evidence of either a prior agreement or a contemporaneous oral agreement. [Citations.] Further, if the parties intended the writing to be a complete and exclusive statement of the terms of the agreement, its terms cannot be explained or supplemented by evidence of consistent additional terms. [Citation.]" (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 352 [112 Cal.Rptr.3d 455].) "Put another way, '[i]f a writing is deemed integrated, extrinsic evidence is admissible only if it is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. [Citations.]' [Citation.]" (*Banco Do Brasil, S.A. v. Latian, Inc., supra*, 234 Cal.App.3d at p. 1001.)

We agree with defendants that the purchase agreement is integrated. That was certainly the intent of the parties as it was clearly expressed in the provisions of the purchase agreement, which include an integration clause: "All understandings between the parties are [i]ncorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not

be contradicted by evidence of any prior agreement or contemporaneous oral agreement. . . . Neither this Agreement nor any provision in it may be extended, amended, or modified, altered or changed, except in writing [s]igned by Buyer and Seller." But the conclusion that the purchase agreement is integrated is only the beginning of the discussion, not the end. Burch argues that the agreement contains a critical ambiguity with respect to the agreed scope of the arbitration clause.

■ "Although extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract, these terms must first be determined before it can be decided whether or not extrinsic evidence is being offered for a prohibited purpose. The fact that the terms of an instrument appear clear to a judge does not preclude the possibility that the parties chose the language of the instrument to express different terms. . . . [¶] Accordingly, rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties. [Citations.] Such evidence includes testimony as to the 'circumstances surrounding the making of the agreement . . . including the object, nature and subject matter of the writing . . .' so that the court can 'place itself in the same situation in which the parties found themselves at the time of contracting.' [Citations.] If the court decides, after considering this evidence, that the language of a contract, in the light of all the circumstances, 'is fairly susceptible of either one of the two interpretations contended for . . .' [citations], extrinsic evidence relevant to prove either of such meanings is admissible." (*Pacific Gas & Elec. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 39–40 [69 Cal.Rptr. 561, 442 P.2d 641], fn. omitted.)

On an appeal challenging the interpretation given to a writing, as we have already noted, the substantial evidence rule will apply in cases where the parties present conflicting extrinsic evidence to aid in the interpretation. (*Parsons v. Bristol Development Co., supra,* 62 Cal.2d at p. 866, fn. 2; *Schaefer's Ambulance Service v. County of San Bernardino, supra,* 68 Cal.App.4th at p. 586.) Before us is a modified written agreement with the critical issue being the meaning or intent of the parties behind that modification. The parties presented conflicting extrinsic evidence on that issue, and, therefore, the substantial evidence rule applies. As long as the trial court's order was supported by substantial evidence in the record, any evidentiary conflict must be resolved in favor of the prevailing party (i.e., Burch), and any reasonable interpretation of the writing by the trial court will be upheld. (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 746–747 [131 Cal.Rptr. 873, 552 P.2d 1169]; *Parsons v. Bristol Development Co., supra,* 62 Cal.2d 861; *Roden v. Bergen Brunswig Corp.* (2003) 107 Cal.App.4th 620, 624–625 [132 Cal.Rptr.2d 549]; *De Anza Enterprises v. Johnson* (2002) 104 Cal.App.4th 1307, 1315 [128 Cal.Rptr.2d 749].)

"[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable." (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) "[W]here . . . the enforceability of an arbitration clause may depend upon which of two sharply conflicting factual accounts is to be believed, the better course would normally be for the trial court to hear oral testimony and allow the parties the opportunity for cross-examination. As the trial court here remarked, 'it's pretty difficult to weigh credibility without seeing the witnesses.' " (*Id.* at p. 414.)

The trial court's authority to hold an evidentiary hearing to assist it in the interpretation of a contract is set forth very clearly in *Rosenthal* and is well supported by several other cases. (See *Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 758 [50 Cal.Rptr.3d 700] ["The role of the trial court is to sit as a trier of fact, weighing any affidavits, declarations, and other documentary evidence, together with oral testimony received at the court's discretion, to reach a determination on the issue of arbitrability."]; *Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 358 [72 Cal.Rptr.2d 598] ["Evidence as to the parties' understanding and intent in taking what actions they did take is admissible to ascertain when or whether a binding agreement was ever reached."].) "[T]he paramount consideration [in the interpretation of contracts] is the intention of the contracting parties '. . . as it existed at the time of contracting . . . .' " (*Western Camps, Inc. v. Riverway Ranch Enterprises* (1977) 70 Cal.App.3d 714, 723 [138 Cal.Rptr. 918]; see Civ. Code, § 1636 ["A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."].)

Here, the trial court determined that the need for extrinsic evidence required an evidentiary hearing so that it could listen to witness testimony regarding the intent of the parties. With respect to the testimony presented at the hearing, Burch argued that "[a]ll the papers and all the sides keep talking about these extensive negotiations. What did they actually negotiate if not to take out this arbitration? That's the only thing that got changed after days and days of talks. Nothing else was changed. So if the negotiations didn't strike out arbitration, what did they negotiate?"

The trial court commented on this point: "I agree [the parties] spent a lot of time talking and they ended up striking out that sentence; that's really where it all hinges." It is well settled that, " ' "[u]nless a court can 'to a certainty and with sureness by a mere reading of the document, determine which is the correct interpretation . . . extrinsic evidence becomes admissible

as an aid to interpretation. . . .' " ' " (*Denver D. Darling, Inc. v. Controlled Environments Construction, Inc.* (2001) 89 Cal.App.4th 1221, 1236 [108 Cal.Rptr.2d 213].) That is the approach the trial court took here. It received and relied upon extrinsic evidence to resolve the ambiguity as to the parties' intended scope of the modified arbitration provision.

■ Defendants dispute this conclusion and argue that what the court really did was make additions or otherwise reform the purchase agreement. We disagree. The trial court did nothing more than resolve the conflicting interpretations given by the parties, which had arisen as a result of the negotiated modification of the language in addendum No. 2. The intent of the parties became critical as to the meaning and effect to be given to that modification. In cases where there is "any apparent conflict between its different clauses or provisions, the circumstances surrounding its execution and the conditions and motives of the parties as shown by recitals in the contract or matters in evidence should be taken into consideration in order that the true intent of the parties may be ascertained." (*Retsloff v. Smith* (1926) 79 Cal.App. 443, 452 [249 P. 886].)

■ The trial court clearly acted within its discretion in conducting the special evidentiary hearing to receive extrinsic evidence necessary to the resolution of the contractual ambiguity.

### 3. *Substantial Evidence Supports the Trial Court's Ruling*

"[T]he appellate court must defer to a trial court's assessment of the extrinsic evidence, as it defers to other factual determinations . . . ." (*Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354, 361 [114 Cal.Rptr.2d 265].) Moreover, "where the interpretation of [a] contract turns upon the credibility of conflicting extrinsic evidence which was properly admitted at trial, an appellate court will uphold any reasonable construction of the contract by the trial court." (*Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 913 [75 Cal.Rptr.2d 573].) An appellate court will not determine that the trial court erred in construing a contract where the intent of the parties is not clear, and evidence of the circumstances is not before it. (*Heslin v. Lapham* (1926) 77 Cal.App. 137, 139 [246 P. 150].)

The trial court heard and considered the testimony of both Burch and Warren during the evidentiary hearing. Such testimony was generally consistent with the written evidence previously submitted by the parties in their respective declarations. However, with live testimony, the trial court could and did assess and weigh the credibility of each of the witnesses, which is much more difficult with mere declarations. Under settled principles, we must resolve all evidentiary conflicts in favor of the prevailing party and affirm the

order as long as the evidence favoring the prevailing party is sufficient to support it. We may not insert ourselves as the trier of fact and reweigh the evidence.

We have summarized the relevant evidence in an earlier part of this opinion. Based on this evidence, the trial court concluded that the striking and initialing of the last sentence of the arbitration clause in addendum No. 2, when considered in the context of the purchase agreement as a whole (including the Warranty booklet), memorialized defendants' agreement that Burch would not be required to arbitrate any claims that are unrelated to the HBW Warranty.

After concluding that the modification to addendum No. 2 had created an ambiguity, the trial court summed up its findings by stating, "I don't understand why that sentence is crossed out. It makes no sense to me in the context of it, and for months now I look at it and I go why would the parties do this. It's either accomplishing something or it's not accomplishing something or it's making someone else believe that it's accomplishing something that it's not accomplishing." The court went on to state that "I think that this hearing was very helpful, more so than I thought it would be than reading declarations when you have genuine controversy over what was said, because you really can't assess credibility in a declaration."[16]

The parties' conduct in total, as manifested in their multiple telephone conversations, extensive negotiations, and the ultimate striking out and initialing of the last sentence of addendum No. 2, supports the trial court's conclusion that there was no agreement to limit Burch's litigation of her claims against defendants to the arbitral forum. As Burch made clear in her testimony, she repeatedly explained to defendants that she would not agree to arbitrate against defendants and wanted to preserve her California state law rights. The trial court accepted this testimony as true. All of this evidence was more than sufficient to support the trial court's ruling as to the intent of the parties and the meaning to be given to the modification of addendum No. 2.

### 4. *There Was No Valid Agreement to Arbitrate Disputes Between Burch and Defendants*

Mutual assent is required for there to be an enforceable agreement to arbitrate disputes. " '[A]rbitration is a matter of contract and a party cannot

---

[16] On June 1, 2011, during the pendency of this appeal, Burch filed a motion with this court for an order directing correction of the reporter's transcript with respect to some statements made by the trial court during proceedings on December 17, 2009. Defendants opposed this motion, arguing that there was no error in the record. As we have not relied upon such disputed portion of the transcript and have found, in the undisputed portion of the record, more than substantial evidence to support the trial court's findings and decision, we have denied Burch's motion as moot.

be required to submit to arbitration any dispute which he has not agreed so to submit.' " (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83 [154 L.Ed.2d 491, 123 S.Ct. 588], quoting *Steelworkers v. Warrior & Gulf Co.* (1960) 363 U.S. 574, 582 [4 L.Ed.2d 1409, 80 S.Ct. 1347].) "The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract. [Citations.] There is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate. [Citation.]" (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800].)

In other words, mutual assent exists when a reasonable person would conclude from the outward conduct of the parties that there was mutual agreement regarding their intent to be bound. (*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1049–1050 [107 Cal.Rptr.2d 645].) If such mutual intent to be bound into arbitration cannot be shown, arbitration will not be compelled. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 804 [79 Cal.Rptr.2d 273].)

Regardless of how broad the terms of a contract are, the contract will only extend to those issues for which it appears that the parties intended to contract. (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 739 [222 Cal.Rptr. 1, 710 P.2d 833].) The parties must agree on all material terms; otherwise, there is no meeting of the minds between the parties and thus, no contract is formed. (See *Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421, 1430 [129 Cal.Rptr.2d 41].)

The last and now stricken sentence of addendum No. 2 made arbitration the exclusive remedy for all parties involved. When defendants agreed to strike out that sentence it is reasonable to conclude that they were indicating that they understood, consented and agreed that arbitration would *not* be the exclusive method for seeking redress as to construction defect disputes between Burch and themselves, and that arbitration would, as negotiated by the parties, only be applied to legal proceedings by Burch involving warranty claims under HBW's Warranty.[17]

Given the trial court's conclusion regarding the intent of the parties with respect to the scope of the modified arbitration clause, it is clear that Burch did not enter into an agreement to arbitrate any construction defect disputes she might have with defendants arising out of her purchase of the property.

---

[17] Under the purchase agreement, it appears that warranty claims falling within the coverage of the HBW Warranty would be subject to arbitration.

## *DISPOSITION*

The order denying the motion to compel is affirmed. Burch shall recover her costs on appeal.

Klein, P. J., and Kitching, J., concurred.