Filed 10/8/24  Sanchez v. River Valley Farms CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARISELA GUTIERREZ SANCHEZ et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> RIVER VALLEY FARMS, LLC, et al., <br><br> Defendants and Appellants. | H051472 <br> (Monterey County <br> Super. Ct. No. 22CV003126) |

Claiming wage and hour violations spanning discrete periods of seasonal employment, plaintiffs Marisela Gutierrez Sanchez and Adriana Lopez sued defendants River Valley Farms, LLC; Southern Pacific Farming, Inc.; and Southern Pacific Farming II, LLC.[1]  River Valley moved to compel arbitration, relying on arbitration agreements executed—by River Valley staff, purportedly with plaintiffs' authorization—at the outset of some but not all of the harvest seasons.  Rejecting plaintiffs' testimony that they had not accepted the agreements but concluding that each agreement covered only the season in which it was executed, the trial court granted River Valley's motion only in part.  River Valley appeals the partial denial.  We affirm.

---

[1] Like the trial court and counsel, we refer to Gutierrez using her first surname. We refer to defendants collectively as "River Valley."  Three other individuals joined plaintiffs' suit, but those individuals are not parties to this appeal.

## I.    BACKGROUND

River Valley is an agricultural company that hires seasonal workers, including plaintiffs, to harvest fruit.  "[O]nboarding" of seasonal workers is done in the fields. In-field onboarding includes presentation of an orientation video, the employee handbook, and the electronic execution of arbitration agreements.  River Valley's practice is to require all seasonal hires, including rehires, to accept arbitration agreements.  At the end of each harvest season, River Valley terminates the workers' employment.

Plaintiffs each worked three harvest seasons for River Valley, in 2020, 2021, and 2022.  River Valley produced only arbitration agreements purportedly accepted by Gutierrez in the 2020 and 2021 harvest seasons and by Lopez in the 2020 season.[2]

The arbitration agreements define their scope as covering claims "that arise[] from . . . your employment or the termination of your employment" and involve "any pending matter concerning your employment or the termination of your employment," including matters concerning "any enforceability [*sic*] or breach of this employee handbook[3] or any alleged employment contract/agreement, and/or any dispute or claim that arises out of the relationship (or the nature of the relationship) or the commencement or termination of the relationship."  By its express terms, the agreement applies to "claims that pre-exist or could pre-exist [its] date."[4]  A separate explanation of the arbitration procedure

---

[2] For DocuSign purposes, River Valley assigned plaintiffs the e-mail accounts "Mari@invalidemail.com" and "Marisela@invalidemail.com" (for Gutierrez in 2020 and 2021, respectively) and "Adri@invalidemail.com" (for Lopez in 2020).  River Valley stipulated that these were not valid e-mail accounts.

[3] Although the provision refers to an employee handbook and "foregoing" dispute resolution procedures, River Valley produced neither the handbook nor the procedures.

[4] The quoted text comes from the agreement Lopez purportedly accepted in 2020. There are slight nonsubstantive differences between the quoted text in Lopez's agreement

provided that the plaintiffs had an " 'at-will' employment relationship" with River Valley.

In the trial court, plaintiffs disputed whether they accepted any arbitration agreements at all. After an evidentiary hearing, the trial court ruled that plaintiffs were bound by arbitration agreements executed in the seasons listed above. That determination is not challenged on appeal.

But the trial court ruled that the arbitration agreements covered only the season of employment during which they were executed. Accordingly, the trial court granted River Valley's motion for each season for which it produced an arbitration agreement, but denied its motion for each season for which it did not.

River Valley timely appealed.

## II.    DISCUSSION

The trial court determined that plaintiffs had accepted arbitration agreements, which required them to arbitrate claims arising out of their "employment" and the "termination" thereof. At issue is whether these agreements cover claims arising from later harvest seasons, in which River Valley rehired the terminated plaintiffs without obtaining new arbitration agreements. The term "employment" might reasonably refer only to the season of employment for which the employee executes the arbitration agreement as a condition of that discrete employment, or it might reasonably sweep more broadly. But reading the agreement as a whole and in context resolves this ambiguity, and we conclude that the parties did not intend the arbitration agreements from prior finite periods of employment to extend to later periods.

---

and the corresponding text in Gutierrez's two agreements, which include substitution of the third-person "their employment" instead of "your employment."

3

**A.**  *Legal Principles and Standard of Review*

Arbitration is a matter of agreement between parties, and where the scope of an agreement to arbitrate is in doubt, California law, like federal law " ' "establishes 'a presumption in favor of arbitrability' " ' " (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 763 (*Mendoza*), quoting *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125):  We resolve doubts as to the scope of an arbitration agreement in favor of arbitration "in the absence of indication of contrary intent, and where the arbitration clause is reasonably susceptible of such an interpretation." (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323.)

But the corollary of this principle is that we give effect to the contractual indications limiting the agreement to arbitrate:  " 'The " ' " ' ". . . policy favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate." ' " ' " ' " (*Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 227 (*Franco*).)  In construing an arbitration agreement, we apply the same principles that apply to other contracts.  (*Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 578 (*Quach*) [explaining that, like federal law, California policy favoring arbitration puts arbitration agreements on " 'equal footing with other contracts' "].)

We examine first whether there is an agreement to arbitrate (*B.D. v. Blizzard Entertainment, Inc.* (2022) 76 Cal.App.5th 931, 942), and, if there is, we look to whether the parties' dispute falls within the agreement.  (*Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 687 (*Ahern*).)

We construe an arbitration agreement "like other contracts to give effect to the intention of the parties and the ordinary rules of contract interpretation apply.  [Citation.]  If the contractual language is clear and explicit, it governs." (*Mendoza*, *supra*, 75 Cal.App.5th at p. 764.)  "The contractual language must be given its usual and ordinary meaning, the agreement must be interpreted as a whole, and the language must not be determined to be ambiguous in the abstract." (*Duran v. EmployBridge Holding*

4

*Co.* (2023) 92 Cal.App.5th 59, 65 (*Duran*).) " ' "Whether the contract is reasonably susceptible to a party's interpretation can be determined from the language of the contract itself [citation] or from extrinsic evidence of the parties' intent." ' " (*Mondragon v. Sunrun Inc.* (2024) 101 Cal.App.5th 592, 612.)  If the contract language is ambiguous—"that is, reasonably susceptible to more than one meaning"—extrinsic evidence may be admitted to resolve the ambiguity.[5] (*Duran*, at pp. 66, 68; see also *Hartnell Community College Dist. v. Superior Court* (2004) 124 Cal.App.4th 1443, 1451 (*Hartnell*) [considering extrinsic evidence to interpret arbitration agreement]; *Burch v. Premier Homes, LLC* (2011) 199 Cal.App.4th 730, 733–734 (*Burch*) [same].)

Because the parties to an arbitration agreement "may freely delineate in their contract which disputes will be arbitrated and which will not" (*Duran*, *supra*, 92 Cal.App.5th at p. 65), we " ' "give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the contract was made." ' " (*Ahern*, *supra*, 74 Cal.App.5th at p. 687.)  "[A]mbiguities or doubts about the scope of the arbitration provision should be resolved in favor of arbitration." (*Duran*, at p. 66; see also *Vaughn v. Tesla, Inc.* (2023) 87 Cal.App.5th 208, 218, fn. 5.)  But " ' "contractual terms themselves must be carefully examined before the parties to the contract can be ordered to arbitration." ' " (*Ahern*, at p. 688.)

In evaluating the denial of a motion to compel arbitration, our standard of review depends on the basis for the court's order: " ' "If the court's order is based on a decision of fact, then we adopt a substantial evidence standard.  [Citations.]  Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed.  [Citations.]" [Citation.]  Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo

_____

[5] Extrinsic evidence may also be admitted to demonstrate that a facially unambiguous contract is reasonably susceptible to more than one meaning.  (See *Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432–433.)

review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning.' " (*Franco*, *supra*, 39 Cal.App.5th at p. 227; see also *Hartnell*, *supra*, 124 Cal.App.4th at p. 1449 [reviewing de novo where extrinsic evidence aiding interpretation of the arbitration agreement was "essentially undisputed"]; *Burch*, *supra*, 199 Cal.App.4th at p. 742 [reviewing trial court's construction of ambiguous contract for substantial evidence where the extrinsic evidence was in conflict].)

Plaintiffs argue that River Valley failed to prove the existence of an arbitration agreement covering claims in the disputed years, so our standard of review should require River Valley to establish that the trial court's order was " '[e]rroneous as a matter of law.' " (See generally *Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1121.) We reject plaintiffs' framing of the dispute. The dispute is not about what arbitration agreements exist, but about what the existing arbitration agreements mean. That question of contract interpretation we review de novo in the absence of conflicting extrinsic evidence.

**B.      *The Scope of the Arbitration Agreements***

River Valley argues that because the arbitration agreements generally require plaintiffs to arbitrate claims " 'aris[ing] from . . . [their] employment or the termination of [their] employment' " and because plaintiffs are pressing wage and hour claims that arose from employment in later seasons, their claims are covered by the arbitration agreements. We agree that the language is unambiguous as applied to the period of seasonal employment in which the agreements were executed. But River Valley's application of this language presumes that the parties' reference to "your employment" in the arbitration agreement bore no relation to the seasonal limitation on the parties' employment relationship or to the expected termination of employment at the end of the harvest season. Reading the contract carefully and in context, however, demonstrates that the parties did not intend the arbitration agreement to extend to future posttermination seasons of employment. Because we resolve the parties' intent by reference to the text of

6

the contract and extrinsic evidence, we need not resort to presumptions to determine the scope of the agreement to arbitrate. (See *Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744; see also *Quach*, *supra*, 16 Cal.5th at p. 578 [California law puts arbitration contracts on equal footing with other contracts]; *Duran*, *supra*, 92 Cal.App.5th at p. 65 ["Our goal is to give effect to the mutual intention of the parties at the time the contract was formed"]; *id*. at p. 68 [extrinsic evidence is admissible to prove parties' intent in arbitration context]; *Burch*, *supra*, 199 Cal.App.4th at p. 744 [trial court acted within its discretion in considering extrinsic evidence to resolve ambiguity as to intended scope of arbitration provision]; *Lamps Plus, Inc. v. Varela* (2019) 587 U.S. 176, 187 [prioritizing "contract rules that help to interpret the meaning of a term" over a rule that applies only where the court cannot discern the parties' intent].)

The text of the agreements is easiest to reconcile with their application only to claims existing or arising in the term they were executed. (See *Vazquez v. SaniSure, Inc.* (2024) 101 Cal.App.5th 139, 142, 144–145 [holding that agreement to arbitrate employment-related claims did not apply to claims arising after employee terminated at-will employment and was rehired without a new arbitration agreement].) Each agreement has three definitions of its core scope. As relevant here, the agreements twice refer to "your employment or the termination of your employment" and once, in a clause describing what "employment" "includes," refer to the parties' "relationship . . . or the commencement or termination of the relationship." Every reference to employment, the relationship, its commencement, and its termination is in the singular. The last reference, in particular, treats the parties' relationship as one that will "commence[]" and "terminat[e]" but a single time.

River Valley argues that the reference to the "relationship" should instead be understood to encompass multiple discrete periods of a worker's employment. There is no textual support for so broad a construction. The word "relationship" appears only in clarifying what is "include[d]" in the term "employment," so we take the "relationship"

7

to mean the employment relationship.  And the agreements contemplate a relationship with a single "commencement" and "termination."  Nothing in the agreement contemplates an ongoing relationship between the parties after River Valley terminates the at-will worker at the close of the harvest season, any expectation of a signatory worker's return in future years, or any expectation of what the terms of a future season of employment might be.  The mere fact that these particular plaintiffs returned establishes neither an expectation nor an entitlement that River Valley would rehire them (as opposed to others) or that the terms of rehire would remain as in prior seasons.  Indeed, the new hire paperwork for each relevant year underscored that there was nothing between the parties beyond an " 'at-will' employment relationship."

The references to "any" dispute, on which River Valley relies, do not alter our interpretation.  The agreements do not apply to "any" dispute without limitation, but to "any" dispute relating to the beginning, middle, or end of the employment relationship.  Reminding us that the agreement covers "any" dispute within its scope does not illuminate what that scope is.  The question is whether the parties intended the agreement to cover claims arising in future terms of employment.

Nor does the parties' inclusion of matters relating to "any alleged employment contract/agreement" support River Valley's interpretation of the contract or its effort to distinguish *Vazquez*; the inclusion merely underscores that the parties' common understanding that employment is at will, and that an employee's contrary claim would be subject to arbitration.  (The full clause provides that matters concerning "employment" or the "termination thereof" include "any enforceability [*sic*] or breach of this employee handbook or any alleged employment contract/agreement.")  The reference does nothing to clarify or prolong the finite period that "employment" designates.  Indeed, "alleged" underscores the absence of any relationship beyond a period of at-will employment.  River Valley emphasized the nonexistence of any other relationship by requiring onboarding workers to sign an acknowledgment of its arbitration procedures, which

8

specified that employment is at will and the arbitration agreement creates no other expectations or obligations. The reference to "alleged" agreements other than the employee handbook thus has no tendency to suggest an intent to cover claims arising out of future terms of employment. Like the "any" dispute language, the reference to "any alleged employment contract/agreement" is cabined by, and does not help us analyze, the general scope provisions limiting the agreement to the employment relationship or its termination.

The absence of some express time limitation or provision stating that the arbitration agreement terminates at the end of employment is of no moment. We accept the premise that the arbitration agreements continue to require plaintiffs to arbitrate claims within their scope even if those claims are filed after the end of plaintiffs' employment.[6] But that does not help us decide the antecedent question of what claims fall within the scope of the arbitration agreement.[7]

Because the contracts are ambiguous as applied to later periods of posttermination employment, we accept River Valley's invitation to consider uncontested extrinsic evidence about its business practices.[8] (See, e.g., *Ahern*, *supra*, 74 Cal.App.5th at p. 687

---

[6] Plaintiffs have not challenged the trial court's decision to compel plaintiffs to arbitrate claims that arose during the same terms of employment in which they executed arbitration agreements.

[7] In *Vazquez*, the Court of Appeal held that an at-will employee's resignation revoked her arbitration agreement, such that she was not required to arbitrate claims arising after she was rehired without executing a new arbitration agreement. (*Vazquez*, *supra*, 101 Cal.App.5th at pp. 144–147.) Because we conclude that the arbitration agreements here were not intended to cover future periods of employment the parties intended to be no more than seasonal, we do not address whether the conclusion of the period in which the agreements were executed revoked the agreement.

[8] Plaintiffs did not contest River Valley's evidence of its general business practices. To be sure, the absence of executed arbitration agreements in some of the years plaintiffs worked shows that River Valley only followed its own business practices imperfectly, at least in some years. But these practices retain their utility in understanding the disputed contractual language in this case. Moreover, when plaintiffs

9

[proper to consider " ' "circumstances under which the agreement was made" ' "]; *VFLA Eventco, LLC v. William Morris Endeavor Entertainment, LLC* (2024) 100 Cal.App.5th 287, 301–302 [extrinsic evidence relevant to prove the meaning of the contract's language is admissible if the contract is ambiguous]; *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 38–39 ["the meaning of a writing '. . . can only be found by interpretation in the light of all the circumstances that reveal the sense in which the writer used the words' "].)  These practices inform the contracts as a whole to resolve the ambiguity in plaintiffs' favor.  (Cf. *Ahern*, at p. 688 [generally "arbitration should be upheld ' " 'unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute' " ' "].)

River Valley asks us to keep in mind that "seasonal employment is the norm." From this, we understand River Valley's point to be that because River Valley always terminated any harvesters at the end of each season, the parties to the arbitration agreement would have intended that "employment" and "the relationship" would encompass successive future periods of employment.  But River Valley also emphasizes that it onboarded all harvesters every season, whether they had worked prior seasons or not.  This process was intended to include screening orientation videos, providing access to the employee handbook, and executing new arbitration agreements.  Thus, River Valley would reasonably expect that any returning employees would, having been onboarded more than once, have signed multiple arbitration agreements.  And the employees would reasonably understand that they were embarking on a new period of employment and a new employment relationship for the season, subject to the conditions

_____

disputed whether they were shown the full onboarding video and whether their electronic signatures on arbitration agreements reflected their consent, the trial court credited testimony from River Valley's witnesses in finding that plaintiffs' electronic signatures evidenced consent.  We defer to the trial court's resolution of conflicting evidence.

10

of employment River Valley required at that time,[9] which conditions might include an arbitration agreement, or not.  Although River Valley included language providing that each agreement "applies to claims that pre-exist or could pre-exist" its execution, it did not include language providing that the agreements applied to future terms of employment.

In context, we find significant the absence of language, "clear and explicit" or otherwise, extending the agreement's coverage to future posttermination periods of employment.  River Valley's own practices underscore that each arbitration agreement, like each season, is discrete and finite.  At the start of every season, River Valley onboards anew all harvesters, whether new or returning, whether party to a prior agreement with River Valley or not.[10]  Thus, the conclusion that the parties did not intend the arbitration agreement to apply to future terms of employment reconciles (1) the usage of language implying a single term of employment with one commencement and one termination; (2) the absence of any language conveying intent to cover future periods of employment, while there is language addressing the agreement's application to existing claims; (3) River Valley's regular reliance on temporary workers; and (4) River Valley's

---

[9] Gutierrez's 2021 onboarding paperwork reflects that the employee handbook, for example, was revised January 1, 2021.  There is nothing to suggest that plaintiffs, who had worked for River Valley in 2020, could insist that their later employment was governed instead by the previous version of the handbook.  Although River Valley asserts that plaintiffs worked each season "under the same terms and conditions of employment," this would only be true to the extent that the parties agreed to the same terms and conditions of employment each season.

[10] Having every employee sign an arbitration agreement every season obviates the need to distinguish between new and former employees, precisely because there exists no relationship between former employees and River Valley other than in the current period of employment.  And, consistent with River Valley's reliance on its business practices in contractual interpretation, we think it reasonable to consider River Valley's business practices in assessing both parties' contractual intentions, to the extent the language of the contract leaves those intentions ambiguous.

11

general practice of fully onboarding rehires, including the requirement that they execute arbitration agreements.

The absence of language addressing future terms of employment distinguishes this case from *Reigelsperger v. Siller* (2007) 40 Cal.4th 574.  There, Reigelsperger signed an arbitration agreement binding him to arbitrate claims against his health care provider who " 'now *or in the future* treat[s]' " him.  (*Id*. at p. 576.)  An accompanying informed consent agreement applied to " 'the entire course of treatment for my present condition *and for any future condition(s)* for which I seek treatment.' " (*Id*. at p. 580.)  The course of treatment in which Reigelsperger executed the arbitration agreement was successful. (*Ibid*.)  But later treatment for a different issue gave rise to a medical malpractice suit. (*Id*. at p. 577.)  That suit was covered, because the arbitration agreement expressly applied to disputes arising out of future treatment.  (See *id*. at p. 580.)  If such a result were intended here, the arbitration agreement could have included similar language.

We acknowledge that the agreements also lack express language excluding future terms of employment from coverage.  But given the language and context we have described above, we do not share River Valley's inclination to assign that omission significant weight.  River Valley—the drafting party—had no need to propose an agreement that covered claims arising in future terms of employment because it intended to require any future rehires to execute new arbitration agreements.[11]

---

[11] River Valley argues that because the parties would have been aware of the possibility an employee would work multiple terms of employment, the agreement would have expressly provided for its termination at the end of the season if such an effect was intended.  We agree that the contract did not explicitly address whether the "employment" referenced included future posttermination periods of employment.  But we are not persuaded by River Valley's contention that the seasonal nature of the employment independently supports its interpretation.  Considering the full context, River Valley's seasonal employment practices support plaintiffs' interpretation.

River Valley's remaining arguments do not persuade us that its interpretation of the contract is reasonable.

First, River Valley relies on *Jenks v. DLA Piper Rudnick Gray Cary US LLP* (2015) 243 Cal.App.4th 1 to argue that employees were subject to the same terms and conditions of employment, including the arbitration agreement, each time they were rehired. But unlike *Jenks*, this case has nothing to do with a successor entity's rights to enforce arbitration agreements against one whose employment continues without interruption post-merger. River Valley onboarded its rehires anew, just like any other new employee. So if it is true that the employees were generally subject to the same terms and conditions of employment year-over-year, it is because River Valley imposed the same terms and conditions in the same way each year. It is not because the parties made any express or implied agreement by reference to any prior years. Moreover, River Valley has conceded on appeal that it cannot prove any arbitration agreement between itself and plaintiffs beyond the three it proved in the trial court.

Second, River Valley contends that "[a]ppellate courts have broadly enforced employment arbitration agreements that cover *all* claims between an employee and employer, regardless of when such claims arose." But it purports to support this contention only with authority applying arbitration agreements to *preexisting* claims. (See *Franco*, *supra*, 39 Cal.App.5th at pp. 229–230; *Salgado v. Carrows Restaurants, Inc.* (2019) 33 Cal.App.5th 356, 358, 361–362; *Desert Outdoor Advertising v. Superior Court* (2011) 196 Cal.App.4th 866, 877.) These cases do not help answer the question before us, which is whether the parties intended their arbitration agreement to cover claims arising out of posttermination periods of future employment. (See *Vazquez*, *supra*, 101 Cal.App.5th at p. 145 [distinguishing *Franco*, *Salgado*, and *Desert Outdoor* because those cases involved a single uninterrupted relationship].) As explained above, the language of the agreements before us, in context, demonstrates that the parties did not agree to submit such claims to arbitration.

13

### III.   DISPOSITION

We affirm the trial court's August 31, 2023 statement of decision denying defendants' motion to compel arbitration as to Gutierrez's claims arising out of her 2022 period of employment and Lopez's claims arising out of her 2021 and 2022 periods of employment.

_____

LIE, Acting P. J.

WE CONCUR:

_____

WILSON, J.

_____

BROMBERG, J.

*Gutierrez Sanchez et al. v. River Valley Farms, LLC, et al.*
H051472