[No. B081819. Second Dist., Div. Four. Feb. 28, 1996.]

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 347,
Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Robert F. Hunt, Posner & Rosen and Howard Z. Rosen for Plaintiff and Appellant.

James K. Hahn, City Attorney, Frederick N. Merkin, Assistant City Attorney, and George R. Lomeli, Deputy City Attorney, for Defendants and Respondents.

## Opinion

**VOGEL (C. S.), P. J.**—Appellant Service Employees International Union, Local 347 (the Union) appeals from the judgment and order denying a petition to compel arbitration of a grievance between one of its members and the City of Los Angeles and Department of Public Works of the City of Los Angeles (the City). Denial of the petition was based on the ground that the dispute was not arbitrable under the provisions of the parties' agreement. After independent review of the agreement, we reverse.

### Factual and Procedural Background

Paul G. Fowler is an employee of the Department of Public Works of the City of Los Angeles. He is represented by the Union, an employee organization which is recognized by the City of Los Angeles as the bargaining representative for City employees in the "Equipment Operation and Labor Employees Representation Unit." The Union and City are parties to a memorandum of understanding (MOU) dated July 17, 1990.

In March of 1992, Mr. Fowler filed a grievance on his own behalf, and on behalf of similarly situated employees, because he believed he was entitled to receive premium pay under note K of the Los Angeles City Administrative Code. Section 4.61 of the Administrative Code contains a listing of all job titles, with their respective salary ranges designated at schedule A. Attached to schedule A is a series of salary "notes" providing for various adjustments to an employee's base rate of pay. Note K states: "A person employed in this class of position, when regularly assigned as said term is defined in Section 4.75 of this Code, to duties consisting of doing maintenance of or servicing or repairing of Motor Sweepers or of sewage disposal facilities and equipment or cleaning catch basins or transporting sewage or catch basin debris; or consisting of working in an area where the noise level is 85 decibels or higher; or when required to perform such duties more than 50% of his time in any one day, shall receive salary at (1) the corresponding step of the second salary schedule higher than the schedule prescribed for this class, or (2) the second premium level rate above the appropriate step

rate of the salary range prescribed for this class." Mr. Fowler contended that he regularly works in an area where the noise level is 85 decibels or higher.

The parties completed all stages of the grievance procedure. In the end, the Fowler grievance was denied on the ground that the note K bonus applied only to a temporary, short-term noise problem which could not be sufficiently mitigated by hearing protection. The Union submitted a request for arbitration pursuant to article 3.1 of the MOU. The City refused to submit the matter to arbitration because "the issue of Note K under the Los Angeles [City] Administrative Code § 4.61, is one that lies outside the Memorandum of Understanding and thus, outside the jurisdiction of an arbitrator."

On October 6, 1993, the Union filed a verified petition to compel arbitration. The City opposed the petition on the grounds that although the Los Angeles City Charter gives to the city council power to set salaries for all City employees and the council could permit the bringing of grievances concerning salary and require unresolved grievances be sent to arbitration, it did not do so in either the MOU or the Employee Relations Ordinance of the City of Los Angeles.[1] The City contended that the resolution of the issue presented by the grievance would intrude into the economic domain reserved under the Employee Relations Ordinance to the city council. Denying the petition to compel arbitration, the trial court ruled that "the resolution of the underlying grievance through arbitration could have a substantial economic impact on City government and, thus, falls within the exclusive province of the Los Angeles City Council to act as the final and unfettered arbiter of such issues on behalf of the City" and that "[t]here was no delegation of the Council's plenary authority over salaries through the establishment of the grievance procedures set forth in the applicable MOU's." At the hearing, the court explained the basis for its ruling: "[I]f there is any ambiguity, . . . it should be construed against the Union. . . . [¶] [T]he only proper reading of the ERO's [Employee Relations Ordinances] in context is to reject the [Union's] interpretation and to construe the ERO's as leaving in the [Council] the ultimate responsibility and authority for setting terms and conditions of employment to the extent that they involve the payment of wages and terms of that employment." The Union appealed from the denial.

---

[1]The purpose of the Employee Relations Ordinance is "to establish policies and procedures for the administration of employer-employee relations in [C]ity government, the formal recognition of employee organizations and the resolution of disputes regarding wages, hours and other terms and conditions of employment." (L.A. Employee Relations Ord., § 4.800.)

I

 On appeal, the Union contends that a dispute over the interpretation of note K is a dispute over " 'the interpretation or application of this written MOU' " as described in the definition of grievance contained in article 3 of the MOU and section 4.865(a)(4) of the Employee Relations Ordinance. Article 3 of the MOU defines a grievance as "any dispute concerning the interpretation or application of this written MOU or departmental rules and regulations governing personnel practices or working conditions applicable to employees covered by this MOU. An impasse in meeting and conferring upon the terms of a proposed MOU is not a grievance." "Grievance" is similarly defined in the Employee Relations Ordinance as "[a]ny dispute concerning the interpretation or application of a written memorandum of understanding or of departmental rules and regulations governing personnel practices or working conditions. An impasse in meeting and conferring upon the terms of a proposed memorandum of understanding is not a grievance." (L.A. Employee Relations Ord., § 4.801.)

According to the Union, note K is incorporated into the MOU by virtue of article 1.9, which states: "The parties agree that this MOU is subject to all applicable Federal and State laws, the City Charter, City ordinances, and any lawful rules and regulations enacted by the Civil Service Commission, ERB, or similar independent commissions of the City." Therefore, the Union contends, disputes concerning its interpretation are subject to the grievance and arbitration procedures outlined in the MOU and the Employee Relations Ordinance.

The Employee Relations Ordinance requires "[t]he management representative principally responsible for meeting and conferring with a recognized employee organization" to "meet and confer with the representatives of such employee organization to develop a grievance procedure for employees in the representation unit, to be incorporated into any memorandum of understanding reached by the parties." (L.A. Employment Relations Ord., § 4.865(a).) "Such grievance procedure shall apply to all grievances, as defined in Section 4.801 of this code, shall provide for arbitration of all grievances not resolved in the grievance procedure, and shall conform to the following standards: . . . [¶] (1) Provision shall be made for discussion of the grievance first with the employee's immediate supervisor on an informal basis; [¶] (2) Provision shall be made for the filing of a formal grievance in writing, and for the processing of the unresolved grievance through not more than four, nor less than two, levels of review with written notice of the

results of each such review to the employee and to his representative, if any; [¶] . . . [¶] (4) If the grievance is not resolved in the grievance procedure, either party may submit the grievance to arbitration by written notice to the other party of its desire to arbitrate. . . . With respect to grievances involving the Department of Airports, Harbor, Water and Power, Library, Recreation and Parks, Pensions and City Employees' Retirement System, the decision of the arbitrator shall be advisory only. [¶] With respect to grievances involving all other City departments, the decision of the arbitrator shall be final and binding on the parties." (L.A. Employment Relations Ord., § 4.865(a).)

The MOU's grievance procedures conform to the standards of the Employee Relations Ordinance. Under the procedures set forth in the MOU, first an informal discussion is held, and then three levels of review. If none of these proceedings succeed in resolving the grievance, there is an optional provision for mediation. If the mediation is unsuccessful or the parties opt not to mediate, and the Union and the grievant agree that they desire arbitration, "the Union shall serve upon the head of the department, office or bureau a copy of the request for arbitration at the same time that the original is filed with [the Employee Relations Board]." The arbitrator's decision "shall be binding upon the parties concerned, except for grievances involving the Department of Airports, Harbor, Water and Power, Library, Recreation and Parks, Pensions, and CERS [City Employees' Retirement System], which shall be advisory only."

■ Under section 1281.2 of the Code of Civil Procedure, the trial court "determines if there is a duty to arbitrate the particular controversy which has arisen between the parties. [Citation.]" (*United Transportation Union* v. *Southern Cal. Rapid Transit Dist.* (1992) 7 Cal.App.4th 804, 808 [9 Cal.Rptr.2d 702].) "In performing its duty to determine if the parties have agreed to arbitrate that type of controversy, the court is necessarily required 'to examine and, to a limited extent, construe the underlying agreement.' " (*Ibid.*, quoting *Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 480 [121 Cal.Rptr. 477, 535 P.2d 341]; accord, *Valsan Partners Limited Partnership* v. *Calcor Space Facility, Inc.* (1994) 25 Cal.App.4th 809, 816-817 [30 Cal.Rptr.2d 785].)

■ "An appellate court is not bound by the trial court's construction of a contract based solely upon the terms of the written instrument where there is no conflict in the evidence. In such a case, the interpretation of the contract becomes a question of law and we must make an independent

determination of its meaning. [Citation.]" (*Valsan Partners Limited Partnership* v. *Calcor Space Facility, Inc.*, *supra*, 25 Cal.App.4th at p. 817.) ■ Here the trial court, looking at the provisions of the MOU without resort to extrinsic evidence, ruled that there was an ambiguity in the grievance and arbitration provisions and that it should be construed against the party seeking arbitration because the agreement involved the terms and conditions of City employment for which the city council had ultimate responsibility.

The trial court incorrectly stated the applicable rule. ■ Even where an arbitration provision is contained in an agreement which has a bearing on the duties of a governmental entity, a construction favoring arbitration is preferred. (*Taylor* v. *Crane* (1979) 24 Cal.3d 442, 452 [155 Cal.Rptr. 695, 595 P.2d 129].) " 'Doubts as to whether the arbitration clause applies are to be resolved in favor of coverage.' " (*United Transportation Union* v. *Southern Cal. Rapid Transit Dist.*, *supra*, 7 Cal.App.4th at p. 809.)

■ Here, the MOU states that after the applicable grievance mechanisms are exhausted, the Union is entitled to arbitrate disputes "concerning the interpretation or application of this written MOU or departmental rules and regulations governing personnel practices or working conditions applicable to employees covered by this MOU." The MOU is "subject to . . . the City Charter, City ordinances, and any lawful rules and regulations enacted by the Civil Service Commission, ERB, or similar independent commissions of the City." Although not specifically discussed in the MOU, there is no dispute that employees covered by the MOU are also covered by the Los Angeles City Administrative Code and note K. The only dispute is over whether to interpret note K to apply to Mr. Fowler or employees in his situation. This dispute is subject to arbitration.

II

■ The City suggests that allowing an arbitrator to determine an employee's eligibility for the note K premium would be an improper delegation of the city council's authority over economic matters. The City relies on section 66 of the Los Angeles City Charter which provides: "The City Council shall, by ordinance, fix the salaries of all officers and employees of the City, including those officers and employees provided for in departments having control of their own definite revenues and funds, whose salaries are not fixed or otherwise provided for by this Charter." (L. A. City Charter, § 66.)

A similar argument was made in *Taylor* v. *Crane, supra,* The employee there was a police inspector who had been discharged for improper use of firearms. The City had enacted a set of procedures under which discharged employees were to appeal to the personnel board. In addition, the MOU between the city and police association, ratified by the city council, provided for grievance and arbitration of disputes concerning discipline. (24 Cal.3d at pp. 448-449.) The employee invoked the grievance procedures contained in the MOU. The grievance was arbitrated, and the arbitrator concluded that in view of all the facts, the employee should have been suspended, not discharged. The police association filed suit seeking judicial confirmation of the arbitrator's award, and the city sought declaratory judgment that the award was void. Ruling in favor of the city, the trial court found that under the city charter, the city manager had the exclusive power to discipline or remove city employees, and that the findings and award of the arbitrator were in conflict with this power. (*Id.* at p. 446.) On appeal, the city argued that its charter did not permit arbitration of the question of the proper penalty for an employee who violated city rules, and that discretion over such decisions was reserved by the charter to the city manager, who could not assign it to another party. (*Id.* at p. 450.) The Supreme Court rejected the city's position because "[a] city charter is construed to permit the exercise of all powers not expressly limited by the charter or by superior state or federal law. [Citation.]" (*Ibid.*) Therefore, "unless the charter expressly prohibits the city from agreeing to arbitrate whether [the employee's] conduct was sufficient cause for his discharge, the city retains the power to do so." (*Id.* at p. 451.) Applying the principle that "where a city charter or ordinance may be construed to authorize grievance arbitration of broad scope, that construction is preferred," (*id.* at p. 452) the court concluded that the provision outlining the city manager's power to determine the proper penalty for an employee who violated the rules "vests in the city manager the *initial* discretion to determine the proper sanction for violation of city rules." (*Id.* at p. 451, italics in original.) "Such a grant of initial control to one officer may not be read to limit his authority to agree to subject his disciplinary decisions to review by an arbitrator." (*Id.* at p. 452.)

As the court in *Taylor* pointed out: "Grievance arbitration does not involve the making of general public policy. Instead, the arbitrator's role is confined to interpreting and applying terms which the employer itself has created or agreed to and which it is capable of making more or less precise. [Citation.]" (24 Cal.3d at p. 453.) Here the city council exercised its initial discretion to fix salaries for all employees by enacting note K. The only task left to the arbitrator is to "interpret[] and appl[y] terms which the [city council] itself has created or agreed to and which it is capable of making more or less

precise. [Citation.]" (*Ibid.*) Under *Taylor*, this does not constitute an impermissible delegation of authority.

## DISPOSITION

The judgment and order denying the Union's petition to compel arbitration is reversed. The trial court is instructed to enter an order granting the petition. The Union is to have its costs on appeal.

Hastings, J., and Rubin, J.,* concurred.

---

*Judge of the Municipal Court for the Santa Monica Judicial District sitting under assignment by the Chairperson of the Judicial Council.