[No. H025540. Sixth Dist. Dec. 15, 2004.]

HARTNELL COMMUNITY COLLEGE DISTRICT et al., Petitioners, v.
THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent,
HARTNELL COLLEGE FACULTY ASSOCIATION, Real Party in Interest.

**COUNSEL**

Law Offices of William Brown and William E. Brown, David L. Melisso for Petitioners.

No appearance for Respondent.

Michelle A. Welsh for Real Party in Interest.

**OPINION**

**RUSHING, P. J.—**

## I. INTRODUCTION

In this original proceeding, Hartnell Community College District and its president (collectively, District) petition for a writ of mandate directing respondent court to vacate its order granting the petition of real party in interest Hartnell College Faculty Association (Faculty Association) to compel arbitration of two faculty grievances. District contends that it cannot be compelled to arbitrate because the arbitration agreement in the parties' collective bargaining agreement gives it the unilateral power to determine whether a faculty grievance should be resolved through a means of redress other than arbitration. Therefore, where, as here, District has determined that the faculty members' grievances may be redressed through the collective bargaining process rather than arbitration, District believes it cannot be compelled to arbitrate.

 We granted writ review to determine an issue of significance in higher education labor relations. Having performed de novo review of the ambiguous arbitration agreement in question and the extrinsic evidence relevant to its interpretation, for the reasons discussed below we conclude that the arbitration agreement does not give District the unilateral power to determine the arbitrability of faculty grievances and that the trial court properly granted Faculty Association's petition to compel arbitration. Accordingly, we will deny the petition for writ of mandate.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Background*

Robert Beery (Beery) and Marla Dresch (Dresch) are members of the faculty at Hartnell Community College. Both faculty members sought redress of a grievance under the grievance/arbitration agreement set forth in article 15 of the parties' collective bargaining agreement (Article 15). Beery claimed in his grievance that District had docked two days of pay in violation of the provisions of the collective bargaining agreement. Dresch's grievance stated that her workload as a math lab instructional specialist was excessive and should not exceed that of a similar full-time math faculty position. The grievances were denied during District's grievance review process and both faculty members sought arbitration.

### B. *The Arbitration Agreement*

Article 15 of the collective bargaining agreement contains the parties' arbitration agreement. It provides for three levels of faculty grievance review, including an informal response by the grievant's immediate supervisor, appeal of that decision to the vice-president, and appeal of the vice-president's decision to the district superintendent-president/designee. If the grievant is not satisfied with the decision by the district superintendent-president/designee, Article 15 provides that the grievant may submit a request in writing for arbitration of the dispute.

Article 15 also includes the following definition of "grievance," which is central to the parties' dispute concerning the arbitrability of the grievances of Beery and Dresch: "B. Definition [¶] 1. A grievance is defined as [a] formal written allegation by a grievant that the grievant has been adversely affected by violation of a specific article, section, or provision of this Agreement. [¶] a. A grievance as defined in this Agreement shall be brought only by this procedure. [¶] b. Not included in this definition of grievance is a complain [*sic*] which may, or should as interpreted by the District, be appealed or redressed through some other complaint, appellant [*sic*], or redress process.

[¶] c. The [Faculty] Association and the District agree that neither party intends to permit the broadest permissible interpretation of the arbitration clause to reflect public policy as set forth in private industry sector cases which favor a broad scope of arbitration."

## C. *The Petition to Compel Arbitration*

After District refused to arbitrate the grievances of Beery and Dresch, Faculty Association petitioned to compel arbitration. District's refusal to arbitrate was based upon Article 15(B)(1)(b) of the collective bargaining agreement, which District interpreted as expressly permitting District to exclude particular grievances from arbitration. Faculty Association disagreed that Article 15(B)(1)(b) gave District such authority, asserting in its petition that the provision did not apply in light of District's past conduct in arbitrating faculty grievances. In support of this argument, Faculty Association submitted the declaration of its union representative from 1982 to 2000, who stated that District had never before refused to arbitrate a faculty grievance (other than one grievance that District objected was an unfair labor practice claim within the jurisdiction of the Public Employment Relations Board) or asserted that it had absolute discretion to determine whether a grievance would proceed to arbitration.[1] Faculty Association also submitted copies of previous collective bargaining agreements to show that the language of Article 15(B)(1)(b) had been included in every collective bargaining agreement since the inception of collective bargaining in 1979. Based on this extrinsic evidence, Faculty Association contended that the parties' mutual agreement to arbitrate all faculty grievances could be inferred from District's past conduct.

Faculty Association also argued that District should be estopped from refusing to arbitrate because Faculty Association had relied upon District's practice of arbitrating faculty grievances, and because District's new assertion of its unilateral power to determine arbitrability left faculty members without a remedy for violations of the collective bargaining agreement. Finally, Faculty Association stated that it was understood that the grievance procedure was binding on both parties.

---

[1] In response to the petition to compel arbitration, District submitted a copy of the December 3, 1982, opinion and award of Arbitrator Arnold O. Anderson in an unrelated arbitration in which the arbitrator determined that the grievance at issue was not arbitrable because District had properly exercised its power under the collective bargaining agreement to determine that the grievance asserted an unfair labor practice and should be heard by the Public Employment Relations Board rather than an arbitrator. In so ruling, the arbitrator stated that the language of Article 16(B)(1)(b) (now Article 15(B)(1)(b)) was "clear and unambiguous and permits of no other interpretation." Had the opinion of Arbitrator Anderson been properly submitted in the form of an expert declaration, we still would not consider it because Evidence Code section 703.5 provides that an arbitrator is not competent to testify in any subsequent civil proceeding as to "any statement, conduct, decision, or ruling" made in a prior arbitration.

D. *Opposition to Petition to Compel Arbitration*

District responded that it could not be compelled to arbitrate the grievances of Beery and Dresch for several reasons. First, District argued that it was expressly authorized to exclude particular grievances from arbitration because Article 15(B)(1)(b) was the product of "arms-length collective bargaining" and gave District the right "to interpret a complaint brought to its attention as either falling within, or, alternatively, not falling within, the definition of a grievance . . . [and] the right to determine at any point in time, what further redress process is and is not available for a given complaint." Therefore, District believed that it had properly determined that the faculty grievances in question could be redressed by the alternative means of the collective bargaining process.

Second, District disagreed that District's obligation to arbitrate could be determined by evidence of its past conduct. District maintained that the provisions of Article 15 concerning the arbitration agreement were plain and unambiguous, and therefore extrinsic evidence could not be used to change those terms. District also asserted that employers may unilaterally change a past practice where, as here, the new practice is permitted by the collective bargaining agreement.

Finally, District rejected that Faculty Association's estoppel argument on the ground that District's exercise of its right under the collective bargaining agreement to process a grievance through the first, second, or third level of grievance review did not constitute a waiver of its contractual right to refuse arbitration.

E. *The Trial Court's Order*

The trial court granted the petition to compel arbitration and ordered the parties to arbitrate the controversies between them in accordance with the provisions of the collective bargaining agreement. The court found that no other procedure was available for redress of the grievances of Beery and Dresch and that District's past practice showed the parties' agreement to arbitrate faculty grievances.

## III. DISCUSSION

A. *The Standard of Review*

The standard of review for an order on a petition to compel arbitration is either substantial evidence where the trial court's decision on arbitrability was based upon the resolution of disputed facts, or de novo where no

conflicting extrinsic evidence was admitted in aid of interpretation of the arbitration agreement. (*Amalgamated Transit Union Local 1277 v. Los Angeles County Metropolitan Transportation Authority* (2003) 107 Cal.App.4th 673, 685 [132 Cal.Rptr.2d 207].) In the present case, de novo review is appropriate since the extrinsic evidence regarding District's past practice of arbitrating faculty grievances is essentially undisputed. The parties agree that District has refused to arbitrate a faculty grievance on the ground that other means of redress were available on only one occasion where the grievance in question was deemed to constitute an unfair labor practice claim within the jurisdiction of the Public Employment Relations Board. As discussed below, after performing de novo review of the arbitration agreement contained in Article 15 of the parties' collective bargaining agreement and the pertinent extrinsic evidence, we have concluded that the trial court did not err in granting Faculty Association's petition to compel arbitration.

## B. *Determining Arbitrability*

■ Under Code of Civil Procedure section 1281.2, upon the petition of a party to an arbitration agreement the court determines whether a written arbitration agreement exists and whether the parties should be ordered to arbitrate their controversy. (*United Public Employees v. City and County of San Francisco* (1997) 53 Cal.App.4th 1021, 1025–1026 [62 Cal.Rptr.2d 440].) Thus, the question of whether the parties agreed to arbitrate a certain dispute is to be decided by the court, not the arbitrator, unless the parties have clearly and unmistakably provided otherwise. (*Id.* at p. 1026). In making its determination, the court is required to examine and construe the underlying agreement. (*Service Employees Internat. Union v. City of Los Angeles* (1996) 42 Cal.App.4th 1546, 1552 [50 Cal.Rptr.2d 216].) "The right to arbitration ultimately depends upon the terms of the collective bargaining agreement, and a petition to compel arbitration is essentially a suit in equity seeking specific performance of that agreement." (*Amalgamated Transit Union Local 1277 v. Los Angeles County Metropolitan Transportation Authority*, *supra*, 107 Cal.App.4th 673, 685.)

■ The court must also apply the presumption in favor of arbitration, and therefore " '[d]oubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration. The court should order them to arbitrate unless it is clear that the arbitration clause cannot be interpreted to cover the dispute.' " (*Amalgamated Transit Union Local 1277 v. Los Angeles County Metropolitan Transportation Authority*, *supra*, 107 Cal.App.4th 673, 684–685, quoting *Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 652 [35 Cal.Rptr.2d 800].) The presumption applies to "an arbitration

provision . . . which has a bearing on the duties of a governmental entity." (*Service Employees Internat. Union v. City of Los Angeles, supra,* 42 Cal.App.4th 1546, 1553.)

Keeping these principles in mind, we have reviewed the arbitration agreement that is set forth in the parties' collective bargaining agreement, with a particular focus on Article 15(B)(1)(b): "Not included in this definition of grievance is a complain [*sic*] which may, or should as interpreted by the District, be appealed or redressed through some other complaint, appellant [*sic*], or redress process." District contends that this provision clearly and unambiguously provides District with the unilateral power to determine whether any faculty complaint is an arbitrable grievance at any point of the grievance process. Faculty Association responds that District's past practice of arbitrating all faculty grievances shows that Article 15(B)(1)(b) cannot be interpreted as expressing the parties' mutual agreement that District would have such unilateral power.

The parties have not cited and we have not found through independent research any appellate decisions that construe an arbitration agreement similar to that contained in Article 15. However, having independently reviewed the arbitration agreement, we deem it to be ambiguous, particularly with regard to the Article 15(B)(1)(b) language indicating that District may determine whether a faculty complaint can "be appealed or redressed through some other complaint, appellant [*sic*], or redress process." It cannot be determined from this awkward and nearly unintelligible language what other process could have been contemplated as an alternative to arbitration for redress of unresolved faculty grievances other than the grievance review and arbitration process set forth in Article 15. We find little assistance in the expression of the parties' intent at section B(1)(c) of Article 15, which states, "The [Faculty] Association and the District agree that neither party intends to permit the broadest permissible interpretation of the arbitration clause to reflect public policy as set forth in private industry sector cases which favor a broad scope of arbitration." This language is similarly awkward and nearly unintelligible, and for that reason we also deem it to be ambiguous.

■ We further disagree with District's contention that the collective bargaining process constitutes a "redress process" that is a sufficient alternative to arbitration. "Redress" means "to set right" or the "means or possibility of seeking a remedy," while "collective bargaining" is defined as a "negotiation between an employer and a labor union." (Merriam-Webster's Collegiate Dict. (10th ed. 1999) pp. 225, 980.) Thus, a redress process must involve the remedying of an individual employee's complaint, while collective bargaining concerns the collective relationship of employer and employees with regard to wages, hours, and other conditions of employment. (See, e.g., Gov. Code,

§ 3504 [authorizing public employees to organize for the purpose of negotiating wages, hours, and other terms and conditions of employment]; *Perry Farms, Inc. v. Agricultural Labor Relations Bd.* (1978) 86 Cal.App.3d 448, 461 [150 Cal.Rptr. 495] ["improvement of wages, hours and conditions of work is a goal of any collective bargaining system"].) Thus, as generally understood, the collective bargaining process does not include the remedying of an individual employee's particular grievance. Moreover, District has not explained how individual complaints, such as the faculty grievances at issue in the present case, would be resolved through collective bargaining.

■ Accordingly, due to the ambiguity inherent in the arbitration agreement set forth in Article 15 of the parties' collective bargaining agreement, we agree with Faculty Association that the court may consider extrinsic evidence to aid its interpretation. As the federal courts have stated in the context of collective bargaining, " '[e]xtrinsic evidence is inadmissible to contradict a clear contract term, but if a term is ambiguous, its interpretation depends on the parties' intent . . . in light of earlier negotiations, later conduct, related agreements, and industrywide custom.' " (*Pace v. Honolulu Disposal Service, Inc.* (9th Cir. 2000) 227 F.3d 1150, 1158, quoting *Pierce County Hotel Employees & Restaurant Employees Health Trust v. Elks Lodge* (9th Cir. 1987) 827 F.2d 1324, 1327; see also *Shaw v. Metro-Goldwyn-Mayer, Inc.* (1974) 37 Cal.App.3d 587, 599 [113 Cal.Rptr. 617] [extrinsic evidence admissible to aid interpretation of ambiguous paragraph in collective bargaining agreement].) Thus, the court may consider extrinsic evidence regarding the proper interpretation of an ambiguous arbitration clause in a collective bargaining agreement. (See *Amalgamated Transit Union Local 1277 v. Los Angeles County Metropolitan Transportation Authority, supra*, 107 Cal.App.4th 673, 685.)

Of particular significance in the present case is the undisputed extrinsic evidence showing that, prior to the grievances of Beery and Dresch, District had never refused to arbitrate a faculty grievance on the ground that the grievance could be redressed by another process such as collective bargaining, although the language of Article 15(B)(1)(b) was present in all of the parties' collective bargaining agreements. For over 20 years, it could be inferred from District's conduct that it, like Faculty Association, intended Article 15 to provide for arbitration of faculty grievances after three levels of employer grievance review were exhausted. Therefore, we find that the arbitration agreement contained in Article 15 of the parties' collective bargaining agreement was intended by the parties to provide for arbitration upon the written request of the grievant after exhaustion of District's grievance review process, and does not provide District with the unilateral power to decide the arbitrability of faculty grievances. Because Faculty Association made a written request to arbitrate the grievances of faculty members Beery and Dresch after exhaustion of District's grievance review

process, we conclude that the trial court properly granted Faculty Association's petition to compel arbitration.

Having reached this conclusion, we need not address Faculty Association's alternative contention that District has waived its purported contractual right to determine the arbitrability of faculty grievances and for that reason District should be estopped from refusing to arbitrate.

## IV. DISPOSITION

The petition for writ of mandate is denied and the temporary stay order is vacated. Each party shall bear its own costs in this original proceeding.

Premo, J., and Elia, J., concurred.

Petitioners' petition for review by the Supreme Court was denied March 2, 2005. George, C. J., did not participate therein.