Filed 12/12/13  Colonies-Pacific 19A v. Best Buy Stores CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE COLONIES-PACIFIC 19A, LLC, | |
| Cross-complainant and Appellant, | E055373 |
| v. | (Super.Ct.No. CIVRS913003) |
| BEST BUY STORES, L.P., | OPINION |
| Cross-defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  David A. Williams, Judge.  Affirmed.

Gresham, Savage, Nolan & Tilden, Theodore K. Stream and Jamie E. Wrage for Cross-complainant and Appellant.

Robins, Kaplan, Miller & Ciresi, Michael A. Geibelson and Edward D. Lodgen for Cross-defendant and Respondent.

Cross-defendant and respondent Best Buy Stores, L.P. (Best Buy) sued cross-complainant and appellant The Colonies-Pacific 19A, LLC (the Colonies) requesting the trial court declare the real property lease between the parties was not amended and

1

that the lease had been breached by the Colonies.  The Colonies cross-complained raising causes of action for (1) breach of contract, (2) promissory estoppel, (3) breach of the covenant of good faith and fair dealing, (4) fraud, and (5) declaratory relief.  The trial court granted summary judgment in favor of Best Buy, finding the lease was not amended and the Colonies breached the contract.

The Colonies raises six issues on appeal along with subissues.  First, the Colonies asserts the trial court erred because the Colonies raised triable issues of material fact concerning the breach of contract cause of action.  Specifically, the Colonies faults the trial court for not considering issues of waiver and equitable estoppel.  Second, the Colonies asserts the trial court erred in regard to the breach of the covenant of good faith and fair dealing cause of action because there are disputed issues of fact concerning waiver and equitable estoppel.  Third, the Colonies contends the trial court erred because the Colonies raised triable issues of material fact for the promissory estoppel cause of action.  Specifically, the Colonies asserts there is conflicting evidence concerning the existence of a clear promise and reasonable reliance on that promise.

Fourth, the Colonies contends the trial court erred because the Colonies raised triable issues of material fact for the fraud cause of action, in particular, the element of justifiable reliance.  Fifth, the Colonies asserts the trial court erred in granting summary judgment on the declaratory relief action for the same reasons it erred in the other causes of action.  Sixth, the Colonies asserts the trial court erred by excluding experts' declarations.  The first five issues in this case could be summarized as follows:  Do principles of waiver and/or estoppel apply to a breach of contract when a landlord does

not commence construction per a lease agreement because people who were not signatories to the lease are negotiating a possible amendment to the lease concerning delaying the construction dates? We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

James Costanzo (Costanzo) was an associate partner for Pacific Development Group.[1] Fred Karp (Karp) and Melissa Moseley (Moseley) were directors of real estate for Best Buy Co., Inc.[2] [Redacted Text.]

On April 22, 2008, the Colonies and Best Buy entered into a lease agreement. Per the lease, Best Buy would rent space in the Colonies Crossroads Shopping Center, located in Upland. The lease provided the Colonies would commence constructing Best Buy's store by May 15, 2009. The lease granted Best Buy the right to cancel the lease if construction did not commence by May 15, 2009. Per the lease, construction was scheduled to be completed by April 15, 2010. Any amendments to the lease were required to be made in writing.

Signatories to the lease agreement on behalf of the Colonies included (1) Daniel W. Richards, Managing Member of BGRW Lakes, LLC; (2) Jeffrey S. Burum, Managing Member of BGRW Lakes, LLC; (3) Arn K. Youngman, Trustee of the Arn K. Youngman Trust, General Partner of Pacific Development Group II; and (4) Dennis

---

[1] Pacific Development Group II, as opposed to Pacific Development Group, is a member of Pacific-Upland, LLC, which is a member of the Colonies.

[2] The party involved in this lawsuit and named in the lease is Best Buy Stores, L.P. as opposed to Best Buy Co., Inc.

3

M. Berryman, Trustee of the Berryman Family Trust, General Partner of Pacific Development Group II. Pat Matre, Vice President of Real Estate for BBC Property Co., signed for Best Buy.

In addition to Best Buy, the shopping center would include Nordstrom's Rack, BevMo, Tilly's, Fresh & Easy, and Red Robin. On December 12, 2008, Costanzo sent an e-mail to Karp reflecting construction of the Best Buy store could commence on May 11, 2009, and be completed on December 11, 2009; however, BevMo and Tilly's would not be completed until February 15, 2010, while Nordstrom's Rack, Fresh & Easy, and Red Robin would not be completed until April 15, 2010. Costanzo wrote, "So if you go ahead of everyone you would be the only tenant standing in a big parking lot. If you want to move to the Nordstrom's schedule then obviously there will [be] more of a center and less construction interference. Let me know what you would like to do."

[Redacted Text.]

On February 27, 2009, Kenneth Wolfson (Wolfson), a member of the law firm representing the Colonies, sent a draft lease amendment to a paralegal in Best Buy's "Legal—Real Estate" Department. The amendment reflected construction would commence on or before November 15, 2009, instead of the originally agreed upon May 15, 2009. On February 27, a senior paralegal at Best Buy informed Wolfson that she was waiting for responses from people at Best Buy concerning the proposed date changes in the draft amendment. On March 1, 2009, via e-mail, Karp informed Costanzo that he was moving to a different position within Best Buy. Karp asked if

4

Costanzo would be available to finalize the lease amendment because it would be better to "finish th[e] amendment rather than pass it on to someone else."

Between March 9 and 12 Karp and Costanzo continued e-mailing each other trying to find a time to talk to one another. On March 27, Costanzo sent an e-mail to Karp: "I haven't heard anything on the revised amendment that we sent out last week. Any update?" Karp replied that he was in Miami but would check on the lease amendment the following week. On April 1, Costanzo sent another e-mail to Karp: "[A]ny update on our amendment? Please let me know." On April 21, Karp replied that he had reviewed the amendment with two people, including Moseley, and Moseley would "get the amendment resolved." [Redacted Text.]

On April 22, Costanzo sent an e-mail to Moseley explaining that he was "trying to get the Best Buy and Nordstrom's Rack schedule on the same track." Costanzo expressed hope that the amendment would be signed soon. [Redacted Text.]

On June 15, Costanzo sent an e-mail to Moseley reflecting Best Buy made a proposal that the rent on the store be lowered to $18 per square foot in exchange for a construction commencement date of February 28, 2010. Costanzo believed he could "convince the partners" to lower the rent to $20 per square foot "[i]n order to end any dispute." Moseley responded that she would not be able to get approval for anything higher than $19.25 per square foot. Moseley also asked Costanzo to clarify information pertaining to the scheduled possession date of the store in light of the new construction dates. Moseley set forth the optimal possession dates for Best Buy.

[Redacted Text.]

On November 23, 2009, Best Buy filed a complaint for declaratory relief. Best Buy alleged the Colonies (1) breached the lease by not commencing construction on May 15, 2009, (2) anticipatorily breached the lease by (a) admitting it could not meet the scheduled possession date and the substantial completion date; (b) refusing to build the store pursuant to the design modifications provided by Best Buy; and (c) not constructing the shopping center in a manner consistent with the site plan. Best Buy further alleged that if the amendment to the lease were valid, then the amendment was also breached due to the Colonies not commencing construction by November 15, 2009. Best Buy requested the trial court declare the lease (and amendment to the extent it was valid) terminated as a result of the actions and inactions of the Colonies.

The Colonies filed a first amended cross-complaint against Best Buy raising causes of action for (1) breach of contract, (2) promissory estoppel, (3) breach of the covenant of good faith and fair dealing, (4) fraud, and (5) declaratory relief. The Colonies alleged it complied with every aspect of the lease except commencing construction because it relied on Best Buy's "repeated promises" concerning modifying the construction schedule. The Colonies faulted Best Buy for not executing the amendment to the lease "until it was impossible for the Colonies to comply with the original dates under the Lease." The Colonies asserted it would have commenced construction on or before May 15, 2009, if not for Best Buy's actions.

Best Buy moved for summary judgment. Best Buy asserted (1) the lease was not amended, and (2) the Colonies failed to commence construction on May 15, 2009, so therefore Best Buy had a right to cancel the lease. As a result, Best Buy contended it

did not breach the lease. The Colonies opposed the motion. The Colonies conceded it did not commence construction on May 15, 2009, but asserted it failed to do so because the lease was modified to reflect construction would be delayed. As a result, the Colonies argued it was not required to commence construction on May 15.

Further, the Colonies asserted the lease modification did not create new construction dates. Rather, the modification reflected only that the construction work would commence on the "Nordstrom's Rack construction schedule." The Colonies asserted this evidence created a triable issue of fact, which should result in summary judgment being denied. In regard to equity, the Colonies asserted Best Buy (1) waived its right to enforce the May 15 commencement date "when it asked and agreed to extend the date"; and (2) was estopped from requiring the Colonies to meet the construction schedule in the lease due its own actions, upon which the Colonies relied.

The trial court issued a tentative ruling finding it was undisputed the Colonies failed to commence construction on May 15, and therefore "Best Buy did have the right to terminate the lease." In regard to the waiver and estoppel arguments of the Colonies, the trial court found the contentions to be unpersuasive because Karp did not have the authority to bind Best Buy and Costanzo did not have the authority to bind the Colonies; as a result the trial court concluded there was not an amendment, modification, or promise the Colonies could have reasonably relied upon. Thus, the trial court tentatively concluded, "Best Buy terminated the lease agreement in accordance with the terms of the lease agreement and it did not breach the contract."

7

As to the covenant of good faith and fair dealing, the trial court found Best Buy continued negotiating with the Colonies after May 15, but the Colonies never provided a firm commencement date due to ongoing negotiations with another tenant. Further, the court found Best Buy's attempts to lower the rent due to the construction delays did not indicate bad faith given the "sluggish economy" and that "rent concessions are common." The court held there were no triable issues of material fact for the good faith and fair dealing cause of action.

In regard to promissory estoppel and fraud, the trial court found Karp's e-mail about preferring to open with the rest of the stores in the shopping center did not constitute a clear promise, because Karp did not have the authority to modify the contract. The court found Karp was merely stating his preference. For the factor of reliance, the trial court concluded there was evidence that Costanzo acknowledged an amendment to the lease would be required and that the Colonies had difficulty finding a new date to commence construction, thus the Colonies could not have justifiably relied on Karp's e-mail as a modification to the lease. Since reliance could not be shown, the trial court concluded the promissory estoppel and fraud causes of action both failed. Thus, the court tentatively granted summary judgment in favor of Best Buy on the cross-complaint of the Colonies.

At the hearing on the motion, the Colonies argued: (1) Karp and Costanzo had authority to modify the lease, or (2) there was a triable issue of fact as to whether they had authority to modify the lease. The Colonies asserted Karp was a director of real estate at Best Buy and the only point of contact for the construction project, so the

8

Colonies could reasonably rely on Karp's representations. The trial court remarked the evidence reflected a Best Buy real estate committee was involved in the lease negotiations, which put the Colonies on notice that a committee—not just Karp—was involved in the lease process. Additionally, the court noted Karp commented that the lease needed to be amended, which also put the Colonies on notice of Karp's authority or lack thereof.

The Colonies argued that the real estate committee was only relevant to new leases, not modifications of existing leases, so Karp could be found to have ostensible authority to modify the lease. The trial court responded that the evidence reflected Karp did not have authority to bind Best Buy "on his own."

In regard to waiver, the Colonies asserted Best Buy waived its right to terminate the contract based upon the failure to commence construction, because the Colonies ceased proceeding with construction due to Best Buy's "request." In regard to reliance, the Colonies argued that only "rare cases" are removed from the jury on the issue of reliance, because it is typically a factual question. The Colonies asserted this was not a rare case and the issue should be presented to a jury because Karp had ostensible authority and the modified agreement involved scheduling Best Buy to open with the rest of the stores in the shopping center—not to commence construction on a specific date. The trial court responded that it was not reasonable to rely on the e-mails when (1) there was a contract reflecting a specific construction commencement date, and (2) the e-mails reflected the need for an amendment to the lease.

9

In closing, the Colonies asserted "reasonable minds could differ as to the facts," and therefore the matter should be presented to a jury. The trial court said there was nothing in the evidence reflecting Karp had the authority to amend or modify the lease on his own. The trial court granted summary judgment in favor of Best Buy on the cross-complaint of the Colonies. Best Buy asserted that since its complaint involved only a request for declaratory relief, then the trial court's ruling on the declaratory relief cause of action of the Colonies was essentially a finding on Best Buy's complaint. In response, the trial court declared the lease was not amended and was properly terminated by Best Buy. The court designated Best Buy the prevailing party.

## DISCUSSION

### A.     STANDARD OF REVIEW

"'On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.]' [Citation.] A motion for summary judgment is properly granted 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.]" (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813.)

### B.     BREACH OF CONTRACT:  WAIVER

The Colonies contends the trial court erred by granting summary judgment on the breach of contract cause of action, because Best Buy waived its right to terminate the contract for failure to commence construction on a certain date.

"Like any other contractual terms, timeliness provisions are subject to waiver by the party for whose benefit they are made. [Citation.]" (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1339, fn. omitted.) "Case law is clear that '"[w]aiver is the intentional relinquishment of a known right after knowledge of the facts." [Citations.] The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver" [citation].' [Citations.] The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right. [Citation.]" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31.)

The evidence reflects Costanzo gave Best Buy the option of proceeding with construction as scheduled or delaying construction in order for Best Buy to open with the other stores in the shopping center. Karp informed Costanzo that his preference would be delaying construction, but the lease should be amended. The draft amendment to the lease was never executed. [Redacted Text.]

Given the foregoing evidence, there is nothing indicating Best Buy either expressly or impliedly waived a right to have construction commence on May 15, 2009. Karp's e-mail expressly reflected an amendment to the lease should be executed. The only reasonable inference to be drawn from this evidence is that the modified dates would not be effective unless the lease were formally amended. Given that the amendment was never signed, Best Buy did not waive its right to have construction commence on May 15. Accordingly, we conclude the trial court did not err by finding

11

there was not a triable issue of material fact as to waiver, because the evidence does not support a finding that Best Buy voluntarily relinquished its right to have construction commence on or before May 15.

The Colonies asserts there is a triable issue of fact concerning waiver [redacted text]. The Colonies argument is not persuasive because the evidence reflects Karp set forth his preference that the construction be delayed, but wrote that an amendment to the lease should be executed. The only reasonable inference to draw from this evidence is that execution of the amendment needed to be complete in order for a waiver of the construction dates to be effective. Thus, without the amendment, there was no waiver.

Next, in support of its argument, the Colonies highlights an e-mail Karp sent to Moseley, in which Karp [redacted text]. The Colonies asserts this evidence creates a triable issue of material fact as to whether Best Buy voluntarily relinquished its right to have construction commence on May 15, because it reflects the Colonies "agreed" with Best Buy's request to delay construction.

The Colonies argument is not persuasive because it is trifling with the semantics in a hearsay-type of communication. The e-mail between Karp and Moseley is a summary of the e-mail conversation Karp had with Costanzo. In the summary, Karp characterized the conversation as Costanzo agreeing to the delay; however, this evidence does not overcome the fact that in the actual e-mail dialog between Karp and Costanzo, Karp informed Costanzo that an amendment to the lease would likely need to be executed. Karp did not waive a right in the e-mail to Costanzo because Karp included the condition that an amendment be executed. The Colonies has not presented

12

evidence that Best Buy voluntarily relinquished its right to have construction commence on May 15. Thus, we conclude the trial court did not err.

C.      BREACH OF CONTRACT: EQUITABLE ESTOPPEL

The Colonies contends the trial court erred by granting summary judgment on the breach of contract cause of action because the court should have applied principles of equitable estoppel.

"Equitable estoppel 'rests firmly upon a foundation of conscience and fair dealing.' [Citation.]" (*Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 187.) Unlike waiver, "[e]stoppel does not require a voluntary relinquishment of a known right." (*Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 163.) Rather, estoppel applies "where the party to be estopped has engaged in inequitable conduct, induced another party to suffer a disadvantage, and then sought to exploit the disadvantage. [Citation.] 'Broadly speaking, "estoppel" refers less to a doctrine than to a conceptual pattern, first articulated in the courts of equity, which has come to pervade our law. When it is successfully invoked, the court in effect closes its ears to a point—a fact, argument, claim, or defense—on the ground that to permit its assertion would be intolerably unfair. It is commonly said that the party to be estopped, having conducted himself in manner X, will "not be heard" to assert Y.' [Citation.]" (*Id.* at p. 162.)

[Redacted Text.] In December 2008, when Karp informed Costanzo that he preferred to delay the construction, Karp wrote, "We probably need to amend the lease to reflect the different dates." Costanzo replied that he would "look at all of the dates and send a proposed amendment."

13

[Redacted Text.] After the May 15 commencement date passed, Best Buy continued trying to work with the Colonies. On June 16, 2009, Moseley proposed a rent reduction and asked Costanzo to clarify the revised construction schedule [redacted text]. [Redacted Text.]

The evidence reflects Best Buy notified the Colonies of its desire to start construction of the store on May 14, but by November the Colonies still had not commenced construction. Best Buy remained in contact with the Colonies while the Colonies continued revising the construction schedule [redacted text].

The evidence does not reflect inequitable conduct and exploitation on the part of Best Buy. The evidence reflects Best Buy informed the Colonies of its committee approval process for real estate transactions, Karp and Costanzo discussed the possibility of delaying construction, Moseley informed the Colonies that Best Buy decided against delaying construction, and then Best Buy waited six months while construction failed to commence. Best Buy did not induce the Colonies to suffer a disadvantage; rather, Best Buy waited while the Colonies was given an opportunity to fix its failure to meet the construction date, but the Colonies continued to delay. Given the evidence, we conclude the trial court did not err in finding there is not a triable issue of material fact concerning equitable estoppel because Best Buy conducted itself in an open manner.

The Colonies asserts Best Buy acted inequitably and exploited the Colonies because the Colonies was ready to begin construction prior to May 15, but did not because "Best Buy requested that the construction schedule be delayed so it could open

14

with the other tenants." The Colonies argument is not persuasive because the evidence does not support a finding of exploitation on the part of Best Buy—[redacted text]. Best Buy did not hide the fact that an amendment to the lease would be needed to modify the construction dates, and Best Buy gave the Colonies six months to cure its failure to commence construction. There is nothing supporting a finding that Best Buy tried to exploit the Colonies.

D.     <u>BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING</u>

In its Appellant's Opening Brief, the Colonies references its breach of contract contentions in its assertions concerning the cause of action for breach of the good faith and fair dealing covenant. Both breach contentions concern the trial court's alleged failure to consider "evidence of waiver and equitable estoppel." Since we have concluded *ante*, that the Colonies failed to provide evidence supporting a finding of waiver and/or equitable estoppel, we will not examine the issue again, and conclude principles of waiver and equitable estoppel were also not supported in relation to the cause of action for breach of the good faith and fair dealing covenant. (See *Peterson Development Co. v. Torrey Pines Bank* (1991) 233 Cal.App.3d 103, 116 [conclusions for breach of contract will apply to issue concerning the breach of good faith and fair dealing covenant].)

15

E.    PROMISSORY ESTOPPEL

The Colonies contends the trial court erred by granting summary judgment on the promissory estoppel cause of action because there are disputed issues of material fact concerning the existence of a clear promise and reasonable reliance on that promise.

"The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.'  [Citation.]  [¶]  'Promissory estoppel is "a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced." [Citation.]'  [Citation.]  Because promissory estoppel is an equitable doctrine to allow enforcement of a promise that would otherwise be unenforceable, courts are given wide discretion in its application.  [Citations.]"  (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901-902.)

We begin with the factor of a clear and unambiguous promise.  "'To be enforceable, a promise need only be "'definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.'""" (*Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218, 226.)  "[A] party seeking to establish promissory estoppel cannot rely on extrinsic evidence to explain an ambiguous statement.  [Citations.]" (*Garcia v. World Sav., FSB* (2010) 183 Cal.App.4th 1031, 1044.)

16

In January 2009, Karp sent an e-mail to Costanzo reading, "I prefer to open with the rest of the center [versus] the construction nightmare . . . We probably need to amend the lease to reflect the different dates." (Ellipses in original.) Costanzo responded that he would "look at all of the dates and send a proposed amendment." The communication between Karp and Costanzo reflects Karp's preference and a need to create an amendment to the lease. The e-mail does not reflect a promise on the part of Best Buy, because there is nothing indicating the exact date changes such that a court could determine the modified scope of the duties of the Colonies and Best Buy.

The Colonies contends Karp's e-mail constituted a promise because the lease could be modified via e-mail. Assuming the Colonies is correct, the larger problem is that Karp's e-mail does not set forth a promise that would permit a court to determine the modified scope of the parties' duties. The e-mail reflects only Karp's preference and a need to create an amendment to the lease with new dates. Without the new dates, there cannot be a promise because the scope of the duties is too vague. For example, if a court were to try to determine from the e-mail if a breach of contract occurred when construction had yet to commence in November it would be impossible, because the scope of the duties was not defined—it cannot be determined from Karp's e-mail what new duty the Colonies had in relation to commencing construction. Thus, we conclude the trial court did not err in finding there is not a triable issue of fact on the element of a clear promise.

Next, we address the issue of reliance on the promise. On February 27, 2009, Wolfson sent a draft lease amendment to a paralegal in Best Buy's "Legal—Real

17

Estate" Department. On February 27, a senior paralegal at Best Buy informed Wolfson that she was waiting for responses from people at Best Buy concerning the proposed date changes in the draft amendment. On March 1, 2009, via e-mail, Karp informed Costanzo that he was moving to a different position within Best Buy. Karp asked if Costanzo would be available to finalize the lease amendment because it would be better to "finish th[e] amendment rather than pass it on to someone else."

On March 27, Costanzo sent an e-mail to Karp: "I haven't heard anything on the revised amendment that we sent out last week. Any update?" Karp replied that he was in Miami but would check on the lease amendment the following week. On April 1, Costanzo sent another e-mail to Karp: "[A]ny update on our amendment? Please let me know." On April 21, Karp replied that he had reviewed the amendment with two people, including Moseley, and Moseley would "get the amendment resolved."

Given that Costanzo and Wolfson were trying to secure the amendment to the lease, the Colonies has not shown it relied on a promise in Karp's e-mail. The evidence reflects an acknowledgement on the part of the Colonies that an amendment was needed in order for the modified dates to be effective. Thus, the Colonies was not relying on Karp's e-mail as a promise.

[Redacted text] however, this does not create a triable issue of material fact on the element of reliance because, without having secured the amendment that the Colonies knew it needed, the decision [redacted text] appears to be a "misguided belief or guileless action" based on a "'hopeful expectation.'" "A mere 'hopeful expectation [] cannot be equated with the necessary justifiable reliance.' [Citation.]" (*Aceves v.*

18

*U.S. Bank, N.A.*, *supra*, 192 Cal.App.4th at p. 227.) The evidence reflects the Colonies knew it needed the lease amendment. Therefore, the decision [redacted text] is not evidence of justifiable reliance, it is evidence of a misguided belief.

F. FRAUD

The Colonies asserts the trial court erred by granting summary judgment on its fraud cause of action because there is a triable issue of material fact on the element of justifiable reliance. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 ["Justifiable reliance" is an element of fraud].) We have concluded *ante*, that the Colonies failed to support a finding of reliance in regard to the cause of action for promissory estoppel. Thus, we will not repeat the "reliance" analysis here. We conclude the trial court did not err by granting summary judgment on the fraud cause of action because there is not a triable issue of fact for the element of justifiable reliance.

G. DECLARATORY RELIEF

The Colonies asserts the trial court erred by granting summary judgment on its declaratory relief cause of action due to the errors asserted *ante*, i.e. waiver, equitable estoppel, and promissory estoppel. We have rejected the waiver and estoppel contentions of the Colonies *ante*. Accordingly, we conclude the trial court did not err by granting summary judgment on the declaratory relief cause of action.

H. EVIDENTIARY RULINGS

1. *PROCEDURAL HISTORY*

The Colonies submitted the declaration of an expert, William Bauman (Bauman). Bauman was a commercial real estate broker with a background in developing retail

19

centers. Bauman declared it had been his experience that retailers preferred to open their stores "with as many other retailers as possible," so as to avoid opening a store in a construction environment. Bauman has also found developers would try to comply with tenants' requests to modify construction schedules, and those requests can be made via e-mail.

Best Buy objected to Bauman's declaration on the basis that it was speculative, in that Bauman did not declare he ever reviewed the lease at issue or the correspondence between Karp, Moseley, and Costanzo. Best Buy asserted Bauman's testimony about the construction industry in general would not aid the trier of fact because it was too general and broad to be helpful. The trial court sustained the objection but did not give reasons for the decision.

The Colonies also submitted the declaration of a second expert, John J. Flynn (Flynn). Flynn had a background in construction and developing commercial real estate projects. In Flynn's experience, he found retailers in a shopping center wanted to open their stores at the same time to avoid construction problems around their stores. Flynn also found construction schedules often changed and those changes can be made via e-mail.

Best Buy objected to Flynn's declaration for the same reasons it objected to Bauman's declaration. The trial court did not rule on Best Buy's objection to Flynn's declaration. In the trial court's tentative ruling, it mentioned the experts' declarations: "The Colonies ha[s] also submitted declarations from experienced real estate consultants indicating that it is a common practice to conduct modifications, to suit

20

development schedules, by e-mail even where a written agreement is in place. This argument is unpersuasive because otherwise the written agreement, in this case, a lease agreement, would have no effect. The Colonies and Best Buy were bound by the terms of the lease agreement."

### 2. *ANALYSIS*

The Colonies contends the trial court erred by sustaining Best Buy's objections to Bauman's and Flynn's declarations concerning the construction industry practice of changing development schedules via e-mail.

"We review the trial court's evidentiary rulings on summary judgment for abuse of discretion. [Citation.]" (*Kincaid v. Kincaid* (2011) 197 Cal.App.4th 75, 82-83.) Knowledge of industry practices is generally only helpful when trying to interpret ambiguous provisions of a contract. (*Hartnell Community College Dist. v. Superior Court* (2004) 124 Cal.App.4th 1443, 1451; *Lugosi v. Universal Pictures* (1979) 25 Cal.3d 813, 826.)

In this case, there was no need to address ambiguities in the contract language. As set forth *ante*, the motion could be resolved by relying on the express and unambiguous language in the lease and correspondence. Accordingly, the experts' declarations about industry customs were irrelevant. Therefore, the trial court acted within reason by sustaining the objection to Bauman's declaration and presumably also excluding Flynn's declaration.

The Colonies asserts the declarations were relevant because they helped to prove waiver, equitable estoppel, and reliance. The Colonies does not explain how the

21

declarations would have proved these matters.  In light of the fact that the experts do not mention the lease or communications of Best Buy and the Colonies in their declarations, it is unclear how the declarations would have assisted a trier of fact in deciding these matters.  (Evid Code, § 801, subd. (a) [expert testimony must "assist the trier of fact"].)  General information about e-mail practices in the construction industry would not add value to the evidence concerning waiver, estoppel, and reliance, because the question is not whether it was proper to communicate via e-mail—the questions in this case concern the content of the lease and communications and whether it was reasonable to rely on the words therein.

## DISPOSITION

The judgment is affirmed.  Respondent, Best Buy, is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.

We concur:

HOLLENHORST _____
                        Acting P. J.

CODRINGTON _____
                        J.

22